This is an appeal from a Pike County Common Pleas Court judgment granting a divorce to Patricia D. Roddy, plaintiff below and appellee herein, and David E. Roddy, defendant below and appellant herein.
Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN AWARDING PLAINTIFF ATTORNEY FEES AND EXPENSES IN AN AMOUNT THAT WAS UNSUPPORTED BY THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CHARACTERIZING AN AWARD OF ATTORNEY FEES AS NONTAXABLE SPOUSAL SUPPORT."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FIXING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FIXING THE AMOUNT OF CHILD SUPPORT."
The parties married in 1980 and have three children. On July 6, 1995, appellant filed the instant complaint for divorce. The trial court held a final hearing for seven non-consecutive days beginning on July 24, 1996 and ending on October 16, 1996. During the hearing, the parties stipulated to the grounds of incompatibility, to shared parenting of the children, and to appellant's average income of $164,495. The parties requested the trial court to decide the matters of child support, spousal support, and attorney fees.
On November 15, 1996, the trial court issued a divorce decree which provided in pertinent part as follows:
 "The Court finds that child support in this matter should be $2,163.31 per month together with poundage of $43.27 for a total award of $2,206.58. This child support award is based upon the calculations contained in a child support worksheet supplied by the defendant which the Court has marked Exhibit XYZ.
 The Court finds that given a 16 year marriage the duration of spousal support should be 8 years from the effective date of spousal support. * * *
 The Court finds that spousal support in this case should be $3,211.00 per month together with 2% poundage of $62.22 for a total award of $3,273.22.
 The Court for the purpose of calculating spousal support imputes income to the plaintiff of $1,000 per month. The Court finds that this amount is a reasonable expectation of the amount she could earn on a part-time basis. The Court finds it reasonable that she would not secure employment until June 1, 1997.
 The Court finds that this imputed income should operate as a credit to the spousal support effective June 1, 1997 which would reduce the spousal support award to $2,211 with poundage of $44.22 for a total award of $2,255.11.
* * *
 The Court finds that the defendant should pay attorney fees to Jay Babbitt in the amount of $57,562.08 and the following expenses in addition to attorney fees:
1. Scott Middleton $2600.
2. Val Francis $ 400.
3. John McKillop $ 500.
 The attorney fee award is fair and reasonable and is exactly equal to the amount that the defendant paid his own attorney. These fees shall be paid in three installments of 33.3333% each month effective December 1 until fully paid."
On April 29, 1997, the magistrate[1] issued findings of fact and conclusions of law. With regard to the issue of attorney fees, the magistrate issued findings of fact in pertinent part as follows:
 "65. The Court further finds that Defendant's fees and expenses, billed by Baker and Hostetler, through October 29, 1996 is $57,562.08 exclusive of expenses for Dr. Tom Paullucci, Psychologist and Richard Ferguson C.P.A.
* * *
 68. The Court finds that the award of attorney fees and expenses should be in the nature of nontaxable support."
(Emphasis added.)
The magistrate issued conclusions of law with regard to attorney fees in pertinent part as follows:
 "19. It is reasonable and appropriate for the award of attorney fees and expenses to be in the nature of non-taxable support.
 20. It is reasonable and appropriate for Defendant to pay, through Plaintiff's Counsel, $57,563.08 as and for attorney fees and costs associated with Plaintiff's representation by Friedman Babbitt Co., L.P.A., in this matter."
(Emphasis added.)
On May 13, 1997, appellant filed objections to the magistrate's report. With regard to the issue of attorney fees, appellant objected in pertinent part as follows:
 "Dr. Roddy objects to the Magistrate's proposed 68th factual finding. The parties stipulated as to the property division in this matter. Accordingly, an award of attorney fees could not have been done as a division of property. Rather, the only power the Court has to award attorney fees is as additional spousal support, which is taxable. The Court has no power to order that spousal support be nontaxable."
(Emphasis added.)
Appellee responded to the above objection by arguing as follows:
 "The Magistrate's 68th factual finding clearly finds that the award of attorney fees herein should be in the nature of non-taxable support. While it is true that the parties reached a stipulated property settlement, it is equally clear that such settlement did not address the issue of attorney fees and the same was clearly left open for determination by the Court. Trans. P. 277. While Defendant argues that the Court has no power to award attorney fees as non-taxable support, he fails to cite any statutory of case law authority in support of his argument."
(Emphasis added.)
On July 3, 1997, the trial court[2] ruled on appellant's objections to the magistrate's findings of fact and conclusions of law. With regard to attorney fees, the trial court wrote in pertinent part as follows:
 "* * * The undersigned finds that there is not sufficient evidence in the record upon which he can familiarize himself with the case, and therefore the court is unable to rule on these objections.
* * *
 It is therefore Ordered, that this court shall conduct a hearing on the issue of reasonable attorneys fees, and shall make a determination on that issue."
On September 30, 1997, the trial court held a hearing on the issue of attorney fees. Expert witness Jeffrey A. Grossman testified that the fees charged by appellee's counsel were reasonable, appropriate, and necessary. He further testified that because appellant hired a Columbus, Ohio attorney "who was considered to be a specialist in the field of domestic relations law," appellee perceived "she had no choice but to respond and [hire similar attorneys]" in order to "match the level of expertise" of appellant's attorney. Appellee testified that her Pike County attorney recommended that she employ the Columbus, Ohio law firm of Friedman Babbitt. Appellant testified that as of October 30, 1996, his attorney fee bill totalled $57,563.34. Appellant further testified that he was "in no position to dispute the reasonableness" of his own attorney fees.
On October 22, 1997, the trial court entered final judgment on the issue of attorney fees. The trial court ordered appellant to pay the same "non-taxable" $57,563.08 amount as previously ordered, but allowed appellant to pay the amount over twenty-nine months rather than just three months. The trial court wrote in pertinent part as follows:
 "The court finds that $57,563.08 is within Defendant's ability to pay and is a sufficient sum to protect Plaintiff's interests. * * *
* * *
 * * * This Court's entry of November 15, 1996 provides that the allowance for attorney fees shall be paid in three equal installments beginning on December 1, 1996. The entry does not indicate the period between the installments. In light of the amount of attorney fees allowed, Defendant's ability to pay, and the payments of $1,000 per month since the entry, for which Defendant shall receive credit, the court ordered that Defendant shall pay $2,000.00 per month beginning November 1, 1997, until the allowance is paid. Since this award is, as previously ordered by Judge Cox, in the nature of non taxable spousal support, no interest will be allowed."
(Emphasis added.)
On November 3, 1997, appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant asserts that the trial court erred as a matter of law and abused its discretion by awarding appellee $57,563.08 in attorney fees and $3,500 in expenses.
R.C. 3105.18(H) permits the trial court to award attorney fees in a divorce action. The statute provides in pertinent part as follows:
 (H) In a divorce or legal separation proceeding, the court may award reasonable attorney fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney fees that the court awards. * * *
The decision of whether to award attorney fees rests within the sound discretion of the trial court. Neel v. Neel (1996),113 Ohio App.3d 24, 34, 680 N.E.2d 207, 214; Walker v. Walker
(1996), 112 Ohio App.3d 90, 93, 677 N.E.2d 1252, 1254; Schultzv. Schultz (1996), 110 Ohio App.3d 715, 725, 675 N.E.2d 55, 62. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; and Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re JaneDoe 1; Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301 citing Buckles v. Buckles (1988), 46 Ohio App.3d 102,546 N.E.2d 950.
In the case sub judice, we find no abuse of discretion with the trial court's decision to award appellee $57,563.08 in attorney fees and $3,500 in expenses. Contrary to appellant's assertions, the award was not unreasonable, arbitrary, or unconscionable. Expert witness Jeffrey A. Grossman testified that the fees charged by appellee's counsel were reasonable, appropriate, and necessary. Grossman explained that because appellant hired a Columbus, Ohio attorney "who was considered to be a specialist in the field of domestic relations law," appellee perceived "she had no choice but to respond and [hire similar attorneys]" in order to "match the level of expertise" of appellant's attorney. Appellee incurred the $3,500 expenses because she and her attorneys hired three experts to assist with preparing her case.[3] We note that appellant similarly employed experts to assist with preparing his case.[4] Grossman testified that appellee's attorneys "didn't invent work as I saw it, they responded to matters" raised by appellant's attorneys. Trial court limited the attorney fee award to the amount of attorney fees that appellant incurred for his own legal representation. Appellant admitted that he was "in no position to dispute the reasonableness" of his own attorney fees.
Appellant argues that the attorney fee award exceeds his ability to pay. The record transmitted on appeal, however, contains evidence to support the trial court's decision that the award does not exceed appellant's ability to pay. The parties stipulated that appellant's average annual income is $164,495. Although appellant presented evidence that his net income has declined recently, other evidence suggests that appellant caused some of the decline. For example, appellant, by choice, recently increased some of his personal expenses, including his housing expense. Although the trial court did not require appellant to maintain life insurance, appellant, by choice, expends $600 per month for life insurance. Another fact tending to demonstrate that the trial court did not abuse its discretion by ordering appellant to pay $57,563.08 for appellee's attorney fees at a rate of $2,000 per month is the fact that appellant's spousal support obligation decreased by $1,000 effective June 1, 1997.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court lacked authority to designate the attorney fee award as "non-taxable spousal support." Appellant believes that the attorney fee award should be deductible from his gross income for tax purposes and added to appellee's gross income for tax purposes.
Section 215, Title 26, U.S. Code, states that individuals who make "alimony or separate maintenance payments" may deduct those payments from their gross income. A corresponding section, Section 71, Title 26, U.S. Code, states that individuals who receive "alimony or separate maintenance payments" must include those payments in their gross income.
Not all court-ordered alimony and separate maintenance payments, however, fall within the federal statutory definition of "alimony or separate maintenance payment." Section 71(b)(1), Title 26, U.S. Code defines "alimony or separate maintenance payments" as follows:
 The term "alimony or separate maintenance payment" means any payment in cash if —
 (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
 (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
 (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
 (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
(Emphasis added.)
Pursuant to paragraph (B), supra, if a court designates a payment as not includible in the payee's gross income pursuant to Section 71 and not deductible from the payor's gross income pursuant to Section 215, then the payment, by definition, is not "alimony or separate maintenance."
In the case sub judice, the trial court designated the attorney fee award as "non-taxable spousal support." Because the trial court made that designation, the attorney fee payments fall outside the Section 71(b)(1), Title 26, U.S. Code definition of "alimony or separate maintenance payments." Thus, we find no merit to appellant's assertion that the trial court lacked authority to designate the attorney fee award as "non-taxable spousal support."
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant asserts that the trial court erred as a matter of law and abused its discretion when fixing the amount and duration of spousal support. The trial court ordered appellant to pay appellee spousal support for eight years in the amount of $3,211 per month until June 1, 1997, and $2,211 per month thereafter.
Initially, we note that when reviewing spousal support awards, we must apply an "abuse of discretion" standard of review. In Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,706, 676 N.E.2d 1249, 1252, the court wrote in pertinent part as follows:
 "Trial courts are granted broad discretion concerning awards of spousal support. Their orders will not be disturbed on appeal absent an abuse of that discretion. 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.' Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140."
Accord Bolinger v. Bolinger (1990), 49 Ohio St.3d 120,551 N.E.2d 157; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131,541 N.E.2d 596, 599; Carman v. Carman (1996), 109 Ohio App.3d 698,703, 672 N.E.2d 1093, 1096. Thus, when reviewing a trial court's spousal support award, our inquiry should focus on whether the trial court abused its discretion. Absent an abuse of discretion, we may not disturb the award.
We again note that an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. In reJane Doe 1, supra; Blakemore, supra. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re JaneDoe 1.
R.C. 3105.18(C)(1) lists the factors that a trial court must consider when determining the amount of spousal support. The statute provides as follows:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which is would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
The statute, as amended, requires the trial court to determine what spousal support amount and duration is "appropriate and reasonable" under the circumstances of the case.[5]
In Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, the court considered spousal support awards in cases involving marriages of long duration, involving parties of advanced age, and involving "a homemaker-spouse with little opportunity to develop meaningful employment outside the home." The court noted as follows that spousal support should terminate when the payee spouse becomes self-supporting:
 "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability, and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definite limit upon the parties' rights and responsibilities."
(Emphasis added.)
Id., at paragraph one of the syllabus.
In the case sub judice, we find that the trial court did not abuse its discretion by awarding appellee spousal support for eight years in the amount of $3,211 until June 1, 1997 and $2,211 thereafter. The parties stipulated that appellant, who is a medical doctor, earns an average of $164,000 per year. Appellee, who has a college degree and some experience in television production, has earned a maximum of $10 per hour. The parties were married sixteen years. Since the parties' children were born, appellee served as their primary caretaker. It appears that appellee will continue to serve as their primary caretaker when school is not in session and when appellant is at work.[6] Appellee testified that she will make herself available to the children when they are not in school. Appellee's service in caring for the children while school is not in session and when appellant is at work will impede her earning ability during the period she will receive spousal support.
Appellant complains that the trial court awarded appellee more spousal support than she requested. We agree with appellant that although appellee requested $2,300 per month spousal support, the trial court awarded her $3,211 per month spousal support for the first six months after the November 15, 1996 divorce decree. We note, however, that the trial court decreased the spousal support to $2,211 per month beginning on June 1, 1997. We further note that appellee testified that her $2,300 requested amount was lower than the level of support appellant gave her before they separated. On the budget that appellee submitted to the trial court, appellee wrote as follows:
 "Note: This budget is a barebones budget based on the funds Plaintiff has had available to her during the pendency of this case. Many 'lifestyle items' such as beauty, meals out, and vacations are absent from the budget. Plaintiff anticipates that with final orders in place, she and the children may begin to once again live close to or at the lifestyle to which they had become accustomed."
Appellee testified that the budget did not include items such as health insurance for herself, a vehicle to replace her van that currently has eighty-eight thousand miles on the odometer, vacations, college savings, pension plan savings, or church contributions which the parties made during the marriage. In light of the fact appellee's request for spousal support did not take into consideration all budget items, we find no abuse of discretion with the trial court's spousal support award. As we noted, supra, R.C. 3105.18(C)(1), as amended, requires the trial court to determine what spousal support amount and duration is "appropriate and reasonable" under the circumstances of the case. The trial court's eight-year award of $3,200 for six months and $2,200 thereafter was appropriate and reasonable under the circumstances of this case.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV
In the fourth assignment of error, appellant asserts that the trial court erred as a matter of law and abused its discretion by ordering him to pay $2,163.31 per month child support. In particular, appellant argues that the trial court should have given him a full $4,500 per year credit for the $4,500 per year he pays for the children's private school tuition, rather than giving him only a $736.68 per year credit. Appellant additionally argues that because under the terms of the parties' shared parenting agreement he spends a substantial period of time with the children, he should be given credit for in-kind contributions he makes for the benefit of the children while they are in his care.
Initially, we again note that when reviewing domestic relations cases, appellate courts should generally apply an "abuse of discretion" standard. Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028, 1030; Blakemore, supra. AccordPauly v. Pauly (1997), 80 Ohio St.3d 386, 686 N.E.2d 1108. Thus, when reviewing a trial court's child support order, our inquiry should focus on whether the trial court abused its discretion.
In Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, the court held that the court must follow the child support statute, R.C. 3113.215, "literally and technically in all material respects." The court wrote as follows:
 "2. The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.
 3. Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination."
Id., paragraphs two and three of the syllabus. In Rock v.Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, DePalmo v.DePalmo (1997), 78 Ohio St.3d 535, 679 N.E.2d 266, and Pauly,supra, the court repeated the Marker holding that court-ordered deviations from the child support schedule and worksheet are not permitted unless the court fully and strictly complies with the statute.
In the case sub judice, the trial court deviated from the child support schedule by $736.68 per year because appellant pays the children's $4,500 per year private school tuition. The trial court arrived at the $736.68 reduction by calculating child support twice, once with and once without deducting $4,500 from appellant's annual gross income. The difference between the two child support figures is $736.68.
The trial court made the following findings to support the deviation: (1) "* * * the parties agree that it is in the children's best interest for them to continue their private schooling"; (2) appellant "has the ability to pay the children's school tuition and that it is in the children's best interest that he shall pay said tuition; (3) "taking into consideration [appellant's] payment of tuition the Court finds that a deviation from the Court's statutory child support level is appropriate and in the children's best interests."
We find no abuse of discretion with the trial court's decision to order a $736.68 reduction, rather than a $4,500 reduction, in an effort to give appellant credit for the $4,500 he pays each year for the children's private school tuition. The trial court arrived at the $736.68 reduction by calculating what appellant should pay for child support after $4,500 is deducted from his annual gross income. We find nothing unreasonable, arbitrary, or unconscionable with this method of calculation.[7]
Appellant also argues that the trial court abused its discretion by failing to give him a credit for in-kind contributions he will make for the benefit of the children while they are in his care. In support of this argument, appellant cites Looker v. Looker (Dec. 29, 1992), Franklin App. No. 92AP-1064, unreported, and Weddell v. Weddell (June 29, 1994), Montgomery App. No. 14274, unreported.
In Donaldson v. Donaldson (Jan. 30, 1997), Franklin App. No. 96APF06-766, unreported, the court that decided Looker held that Looker does not require trial courts to use a certain formula for calculating child support obligations in shared parenting situations. In Donaldson, the court agreed that "pursuant to R.C. 3113.215, the court must analyze each request for deviation based on the best interest of the children and the facts and circumstances of that case." The Donaldson court wrote that "[w]hile the trial court was free to deviate from the guidelines * * *, it was not required to do so if it found that such deviation would not be in the best interest of the children."
In Pauly, supra, the court rejected the holding of Weddell
and further clarified the law relating to child support orders in shared parenting situations. In Pauly, syllabus, the Ohio Supreme Court held as follows:
 "R.C. 3113.215(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215(B)(6) if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child."
Id., syllabus. Thus, the court reasoned that this method of calculating child support in shared parenting situations "permits a court to make an evaluation on a case-by-case basis and to deviate when it finds it is in the best interest of the child" and thus allows a court "to take into account the specific facts of each case." Id., 80 Ohio St.3d at 389,686 N.E.2d at 1108. See, also, Rini v. Rini (Apr. 30, 1998), Cuyahoga App. No. 72414, unreported.
In the case sub judice, we find no abuse of discretion with regard to the trial court's refusal to give appellant credit for in-kind contributions he plans to make for the benefit of the children while they are in his care. The record transmitted on appeal contains no evidence of the amount of in-kind contributions that appellant plans to make for the children while they are in his care. Because appellant's income and earning ability are vastly larger than appellee's income and earning ability, it appears that a deviation would not be in the best interest of the children. The amount of child support ordered does not appear to be unjust to appellant. For these reasons, we find nothing unreasonable, arbitrary, or unconscionable with the trial court's refusal to give appellant credit for the in-kind contributions that he plans to make for the benefit of the children while they are in his care.
Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Painter,* J.: Concur in Judgment Opinion
For the Court
 BY: ______________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] After Visiting Judge Donald Cox, who presided over the final hearing in this action, resigned from the judiciary, the visiting judge who replaced him appointed him special magistrate for the purpose of making findings of fact and conclusions of law.
[2] Visiting Judge Lawrence Grey became the judge in this action after Judge Cox resigned from the judiciary.
[3] Appellee notes that the three experts she hired were a psychologist, a real estate appraiser, and an accountant.
[4] The record transmitted on appeal includes a document entitled "Defendant David E. Roddy's Statement of Expenses." The document sets forth appellant's legal expenses including $2,860.42 for Carl Tishler, Ph.D., $3,000 for Thomas Paulucci, Ph.D., and $3,770 for Richard Ferguson, C.P.A..
[5] In Bettis v. Bettis (Feb. 12, 1997), Medina App. No. 2565-M, unreported, the court noted that the pre-1991 version of R.C.3105.18 based spousal support on the recipient's need rather than what was "appropriate and reasonable."
[6] The trial court made the following finding of fact with regard to the parties' shared parenting plan, appellee's childcare obligation, and the childcare obligation's negative impact on appellee's ability to find substantial employment outside the home:
 "26. The Court finds that pursuant to the terms of the parenting plan entered into by the parties the children will reside with their mother every other week. During the week the children are with their mother the Court finds that it is not probable or necessary that Plaintiff work outside the home. During the time the children reside with their father, pursuant to the stipulated parenting plan, Defendant shall not take the children to the office or the hospital, but shall instead deliver them to the home of their mother for purposes of child care, if Plaintiff is available. The Court finds this arrangement to be in the best interest of the children and as a result it is less likely that Plaintiff will find substantial employment outside of the home."
[7] We note, however, a slight discrepancy that arose during the trial court's calculations. The trial court deducted the $4,500 from appellant's gross income by listing the $4,500 on the "self-employed business expense" line in the child support worksheet software. The placement of the $4,500 on this line in the software decreased the "local taxes paid" by $90 and decreased the "self employment FICA adj" by $131, thus the difference between the adjusted gross income figures on the two worksheets, rounded to the nearest dollar, is $4,280, rather than $4,500.
For three reasons, we do not correct this slight discrepancy in the adjusted gross income figures on the child support worksheets. First, the discrepancy does not amount to an unreasonable, arbitrary, or unconscionable act on the part of the trial court. Second, the discrepancy, if corrected, would result in only a minimal change in appellant's child support obligation. Third, and most importantly, appellant did not bring this slight discrepancy to our attention.
* Judge Mark P. Painter, of the First Appellate District, sitting by assignment.