NEEL, Appellant,

v.

NEEL, Appellee.

[Cite as *Neel v. Neel* (1996), 113 Ohio App.3d 24.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 68786, 68787.

Decided July 25, 1996.

26

*Margaret Kazdin Stanard* and *Deanne L. Robison,* for appellant.

*Joseph G. Stafford* and *John J. Dyer,* for appellee.

Timothy E. McMonagle, Judge.

Plaintiff-appellant Bernadette Marshall Neel appeals from the order of the domestic relations court in her divorce action against defendant-appellee David Neel. Plaintiff-appellant challenges the trial court's implementation of a shared-parenting plan and its division of property. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

The parties were married on November 23, 1986 and had one child, Jon, who was born on April 15, 1988. Plaintiff, an attorney, worked for her brother's law firm prior to the parties' marriage. At that time, plaintiff made a referral to the firm which eventually resulted in the payment of a referral fee to her in the amount of $16,667. In May 1988, plaintiff began public employment, first as a judicial law clerk for the Cuyahoga County Court of Common Pleas and later as a referee of the Domestic Relations Division of that court. At the time of the divorce hearing, plaintiff earned $36,500 per year. In connection with her public employment, plaintiff had a public employee retirement account ("PERS"), as well as a deferred compensation account.

Defendant is also an attorney. It is undisputed that he was not licensed at the time of the case referral to plaintiff's brother's firm. At the time of trial, defendant was working for Benesch, Friedlander, Coplan & Aronoff, a law firm, and earning $75,000 per year. Defendant made contributions to Social Security and also had a pension retirement account at the law firm.

On September 11, 1991, plaintiff filed a complaint for divorce, custody and division of property.

The matter proceeded to trial on June 4, 1992. Plaintiff's evidence indicated that she worked predictable hours, which gave her time to care for Jon. Defendant, on the other hand, worked longer hours during the week, one day during the weekend, and sometimes entertained clients during the evenings.

Plaintiff's evidence further demonstrated that shortly before the marriage, the parties purchased a home in North Royalton. Defendant provided $27,300 of the down payment for the home, which included $16,000 obtained from his parents. It is undisputed that upon receiving her fee referral, plaintiff repaid this sum to defendant's parents, and they accepted repayment. Shortly before trial, the parties entered into a sale agreement for the home and expected net proceeds of $50,000.

Proceeding with his case, defendant testified that the $16,000 which the parties had obtained from his parents in connection with their purchase of the marital home was a gift that did not have to be repaid and was so listed on mortgage application documents. He acknowledged, however, that plaintiff repaid this sum to them after obtaining the fee referral.

As to the $16,667 fee referral, defendant claimed that the matter was referred through him to plaintiff and then to her brother's firm. He was not a licensed attorney at that time, however.

On June 23, 1992, the trial court granted the parties a divorce and awarded custody of Jon to plaintiff. Defendant was awarded reasonable companionship rights and was ordered to pay child support in the amount of $980 per month,

plus poundage. In addition, defendant was ordered to pay plaintiff spousal support of $300 per month for fifteen months unless abated by plaintiff's death or remarriage.

The court then determined that the portion of plaintiff's PERS account earned during the marriage was valued at $17,402 and was a marital asset. The court found the marital assets to also include the marital residence, defendant's retirement plan account, IRAs, plaintiff's deferred compensation account and the household furnishings. The court awarded plaintiff's PERS and deferred compensation accounts, plus her IRA, to plaintiff (total value of $26,080) and awarded defendant his pension retirement account and IRA (total value $10,374). In addition, the court awarded defendant the first $15,706 of the proceeds of the sale of the marital home, with the balance of the proceeds to be divided equally. The court apportioned $1,492 of the marital debt to plaintiff and $2,629 to defendant. Finally, the court determined that had defendant obtained other accounts prior to the marriage, which were nonmarital, and it awarded these to defendant.

Plaintiff-appellant appealed from this order. During the pendency of that appeal, the parties filed motions for shared parenting. Defendant-appellee moved for visitation under the Cuyahoga County guidelines; plaintiff-appellant moved for visitation under the Portage County guidelines.[1] This court dismissed appellant's appeal for lack of a final appealable order.

Thereafter, the trial court held a hearing on the issue of shared parenting. The defendant's evidence established that there was difficulty in enforcing visitation, that he objected to Jon's attendance at Catholic school, and that dealings between the parties had been extremely strained. Defendant sought to increase his influence over his child's life and to increase contact with him.

The plaintiff's evidence indicated that the parties agreed when Jon was born that he would be baptized as a Catholic and that it was her intention to raise him in that religion.

On October 13, 1993, the trial court issued a *nunc pro tunc* journal entry in response to the finality problem noted by this court. In that order, the court divided assets not mentioned in the original judgment entry and implemented a shared parenting plan. Plaintiff appealed. This court reversed and remanded, finding that a *nunc pro tunc* judgment entry was not the proper method for making such modifications. See *Neel v. Neel* (Dec. 1, 1994), Cuyahoga App. No. 66441, unreported, 1994 WL 677434.

---

1. In light of appellant's job as a referee in this county, the matter was tried to the Honorable Jerry L. Hayes of Portage County.

Upon remand, the parties briefed the issue of the division of the outstanding property. The court then found two insurance policies to be additional assets of the marriage and awarded them to defendant. The court further found that stock which the defendant had acquired in Family Dollar Stores was a nonmarital asset and awarded it to defendant. Finally, the court reissued a shared parenting plan.

Plaintiff now appeals and assigns four errors for our review.

## I

Appellant's first assignment of error states:

"The trial court erred by failing to offset plaintiff's retirement account with either defendant's Social Security benefits or plaintiff's hypothetical Social Security benefits."

Within this assignment of error, appellant contends that the trial court erred in determining that the PERS account which she accrued during the marriage is a marital asset and in failing to offset a portion of her PERS account in light of the trial court's complete exemption of defendant's interest in Social Security from the marital estate. Appellant maintains that in order for there to be an equitable division and distribution of marital assets, a portion of her PERS account should be offset from the marital estate. We agree.

It must first be noted that the Ohio Supreme Court has not specifically reached the issue of the manner in which a party's interest in future Social Security benefits is to be evaluated by a domestic relations court. In *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294–1295, the Supreme Court noted in footnote 3 that Social Security benefits are not marital assets to be directly divided pursuant to a division of property. Nonetheless, the *Hoyt* court noted:

"The trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension plan, and the reasonableness of the result. Thus, any given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets." *Id.* at 180, 559 N.E.2d at 1296.

Generally, there is a distinction between the court's duty to consider the property and the court's power to divide that property. *Streeter v. Streeter* (July 30, 1991), Franklin App. No. 91AP–14, unreported, 1991 WL 151215, citing *Alexander v. Alexander* (1985), 20 Ohio App.3d 94, 20 OBR 115, 484 N.E.2d 1068.

Further, it must also be noted that virtually every appellate court has determined that although a party's interest in future Social Security benefits

cannot be directly divided as a marital asset, see Section 407(a), Title 42, U.S. Code, and *Eickelberger v. Eickelberger* (1994), 93 Ohio App.3d 221, 227, 638 N.E.2d 130, 134–135, that interest must be evaluated and considered by the court in effecting an equitable distribution of the parties' marital assets. *Smith v. Smith* (1993), 91 Ohio App.3d 248, 632 N.E.2d 555; *Gerrard v. Gerrard* (Mar. 13, 1990), Clark App. No. 2633, unreported, 1990 WL 27509. More specifically, the interest in Social Security benefits must be evaluated and considered by the court in order to effect an equitable division of the parties' pension and retirement funds. *Eickelberger v. Eickelberger,* 93 Ohio App.3d at 228, 638 N.E.2d at 135. See *Smith v. Smith, supra; Stovall v. Stovall* (Sept. 23, 1992), Summit App. No. 15335, unreported, 1992 WL 236770; *Risner v. Risner* (Dec. 28, 1995), Jackson App. No. 94CA757, unreported, 1995 WL 767360; *Streeter v. Streeter, supra.* The Supreme Court has refused to take in this issue upon a motion to certify, supporting the conclusion that there is no real conflict among the appellate districts as to this issue. See *Smith v. Smith, supra.* This appellate district has not addressed the issue, but one trial court has decided that one of two setoff formulae should be applied to allow for the comparison and evaluation of Social Security and public pensions. See *Coats v. Coats* (1993), 63 Ohio Misc.2d 299, 626 N.E.2d 707.

Thus, the question which remains unanswered for the domestic relations practitioner is the manner in which one party's interest in Social Security is to be evaluated in relation to the other party's interest in a public pension. A number of possibilities have been presented. Considering that this matter has been to this court on two previous occasions, illumination of this issue is warranted. Moreover, in *Risner v. Risner, supra,* the court held that the lower court's failure to make specific findings regarding the manner which calculated a setoff of retirement benefits was an abuse of discretion. Clearly then, on remand, the judge hearing this matter will be called upon to perform setoff calculations and detail the formula which he applies.

■ In the leading case of *Cornbleth v. Cornbleth* (1990), 397 Pa.Super. 421, 427, 580 A.2d 369, 372, the court stated:

"To facilitate a process of equating [public pension participants] and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the [public plan] participant been participating in the Social Security system. This present value should then be deducted from the present value of the [public pension] at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes."

This formula, which calculates a "hypothetical Social Security benefit" for a party who has, in reality, participated in a public retirement plan, not Social Security, and then deducts that hypothetical amount from the public pension, has been adopted by several appellate districts in Ohio. See, *e.g., Stovall v. Stovall, supra.*

In *Coats v. Coats,* 63 Ohio Misc.2d at 301, 626 N.E.2d at 708, the trial judge considered the "hypothetical Social Security" formula but declined to apply it. Instead, the court noted:

"[I]t is more equitable and more appropriate to take into consideration the present value of the *actual* Social Security benefits of the *spouse* of the exempt party * * * rather than the present value of the hypothetical benefits of the exempt party * * *. The exempt party is the party who is exempt from Social Security because he or she has a public or government pension in lieu of Social Security.

"The formula which this court will use to determine the portion of the public pension to be considered a marital property is the present value of the public pension earned by the exempt spouse that exceeds the present value of the Social Security benefits actually earned by the other spouse." (Emphasis *sic.*)

The court noted, however, that this formula should be applied only on a case-by-case basis after taking into consideration the parties' ages, life expectancies, and duration of the marriage. It further noted that it might be inequitable to apply a setoff for marriages of short duration where neither party was near retirement age.

In *Eickelberger v. Eickelberger,* 93 Ohio App.3d at 228, 638 N.E.2d at 135, the court did not apply either of these formulae. Instead, the court held:

"[T]he court should begin an analysis by calculating * * * potential monthly Social Security benefits [of the party employed in the private sector] and * * * potential future PERS monthly future benefits [of the spouse employed in the public sector]. The court may then offset [one party's] potential monthly Social Security benefits against [the other party's] potential PERS monthly benefits. The trial court can then equitably apportion the balance of the parties' marital assets."

The Franklin County Court of Appeals has likewise upheld the use of such a direct setoff formula where one party's expected monthly Social Security benefit is set off from the other party's expected monthly public pension and the balance of the public pension is then divided as a marital asset. See *Smith v. Smith, supra; Streeter v. Streeter, supra.*

While there is some merit to each of the foregoing methods for calculating a setoff, the *Cornbleth* method seems to be both the most thorough and the most

equitable under the circumstances presented herein. Specifically, this method appears to give both parties comparable credit in terms of the years of participation in their respective programs, whereas, in practice, the other methods may well penalize the PERS participant by subjecting a larger proportionate share of that spouse's retirement to division as a marital asset. On remand, the trial court should apply the *Cornbleth* formula of calculation as adopted in *Stovall v. Stovall, supra.*

The first assignment of error is well taken.

## II

Appellant's second assignment of error states:

"The trial court erred in its property division by:

"A. Failing to determine that the fees earned by plaintiff from a personal injury settlement were non-marital assets;

"B. Failing to equitable divide the stock held with Family Dollar Stores, Inc; and

"C. Failing to equitable divide marital assets."

In support of this assignment of error, appellant contends that the trial court erred in failing to award her the $16,667 fee referral as a premarital asset, in failing to. indicate the basis of its award of the Family Dollar stock to defendant ($2,000), and in failing to indicate the basis for awarding the cash value of the Northwestern Life Insurance policy ($4,624) to defendant.

With regard to procedure, we note that in allocating property between the parties to a divorce, a trial court must indicate the basis of its award in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.

With regard to a substantive review of a division of property, we note that a trial court is vested with broad discretion when fashioning its division of marital property. *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308, 309. That discretion, however, is not unbridled in that the award must be equitable, and the court must address the statutory factors in arriving at its division of marital property. *Id.*

R.C. 3105.171 recognizes the existence of separate property of parties and requires a court to consider nonmarital property. *Krisher v. Krisher* (1992), 82 Ohio App.3d 159, 163, 611 N.E.2d 499, 501–502. Accord *Guziak v. Guziak* (1992), 80 Ohio App.3d 805, 809, 610 N.E.2d 1135, 1137–1138 (in fashioning division of

property, court starts from premise that marital property should be divided equally, with each spouse receiving his or her own separate property).

■ Finally, as to the date of valuation, a trial court is vested with discretion to apply a date other than the actual date of divorce. *Gullia v. Gullia* (1994), 93 Ohio App.3d 653, 666, 639 N.E.2d 822, 829–830.

■ With regard to the issue of the $16,000 that was received from appellee's mother for the purchase of the marital home, it is well settled that a valid *inter vivos* gift will be recognized where it is shown by *clear and convincing* evidence that the donor intended to transfer property to the donee then and there and, pursuant to that intention, made delivery to the donee while relinquishing ownership, dominion and control. *Abney v. W. Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424, 429, 602 N.E.2d 348, 351.

■ Here, the undisputed evidence established that appellee's mother transferred $16,000 to the parties in connection with their purchase of the marital home and that the appellant repaid this sum to appellee's mother after receiving payment of her fee on a personal injury case. It is likewise undisputed that appellee's mother accepted this repayment. These circumstances completely undermine any donative intent and negate appellee's claim that this sum was a gift from his mother. See *Dalk v. Dalk* (May 23, 1991), Auglaize App. No. 2–90–13, unreported, 1991 WL 94509; *English v. Costa* (Aug. 22, 1994), Butler App. No. CA94–02–024, unreported, 1994 WL 447395. In short, appellee did not prove by clear and convincing evidence that there was a gift in this instance.

Nevertheless, the trial court did not award appellant this traceable asset. To the contrary, the trial court awarded the first $15,706 from the sale of the marital home to appellee to compensate for the discrepancy in the parties' retirement benefits, and this court has already specifically determined that that discrepancy was improperly inflated due to the trial court's failure to consider any setoff for Social Security.

Considering the court's division of property in its totality, and keeping in mind that appellee earns more than twice what appellant earns, we are compelled to conclude that the trial court abused its discretion in its treatment of this nonmarital asset. Accord *Spychalski v. Spychalski* (1992), 80 Ohio App.3d 10, 19, 608 N.E.2d 802, 808–809.

This portion of the assignment of error is well taken.

■ Regarding the stock in the Family Dollar Stores, the record indicates that the trial court determined that this asset was acquired following the parties' separation and was, therefore, not a marital asset. The record supports this finding and does not demonstrate any abuse of discretion.

■ As to the Northwest Life Insurance policy, the record reveals that the trial court determined that this was a marital asset, yet it awarded the cash value to appellee without explanation. We, therefore, reverse and remand as to this issue so that the trial court can make specific findings. *Kaechele v. Kaechele, supra.*

The second assignment of error is hereby sustained in part and overruled in part.

### III

Appellant's third assignment of error states:

"The trial court erred by not awarding attorney fees to plaintiff."

Attorney fees may be awarded pursuant to R.C. 3105.18(H), which provides:

"In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."

■ Appellate review of attorney fee awards is limited to determining whether (1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence or (2) the domestic relations court abused its discretion. *Oatey v. Oatey* (1992), 83 Ohio App.3d 251, 263, 614 N.E.2d 1054, 1061–1062; *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 90, 2 O.O.3d 65, 68– 69, 355 N.E.2d 894, 898. An abuse of discretion implies more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

■ In this instance, the trial court was fully apprised of all of the facts influencing the award. Moreover, there is no indication that appellant was prevented from fully litigating her rights and protecting her interests in the absence of an award of attorney fees. We, therefore, find no abuse of discretion in the court's denial of an attorney fee award in this instance.

The third assignment of error is overruled.

## IV

Appellant's fourth assignment of error states:

"The trial court erred by modifying its prior order of custody without any showing of changed circumstances."

Shared parenting is authorized by R.C. 3109.041 and 3109.04.

R.C. 3109.041 provides:

"(A) Parties to any custody decree issued pursuant to section 3109.04 of the Revised Code prior to the effective date of this amendment may file a motion with the court that issued the decree requesting the issuance of a shared parenting decree in accordance with division (G) of section 3109.04 of the Revised Code. Upon the filing of the motion, the court shall determine whether to grant the parents shared rights and responsibilities for the care of the children in accordance with divisions (A), (D)(1), and (E)(1) of section 3109.04 of the Revised Code."

R.C. 3109.04(E)(1), in turn, provides:

"(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the residential parent.

"(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

 Thus, in order to modify a decree to implement a shared-parenting plan, the trial court is required to determine that such a modification is in the best interest of the child and that there has been a change in circumstances. See *Perz v. Perz* (1993), 85 Ohio App.3d 374, 376, 619 N.E.2d 1094, 1096. Shared parenting has been rejected where the parties are unwilling to agree upon basic decisions

regarding the child's upbringing and, in particular, the issue of religious education. *deLevie v. deLevie* (1993), 86 Ohio App.3d 531, 539, 621 N.E.2d 594, 599.

In this instance, the record reflects that in its original order of June 3, 1992, the trial court designated appellant the "primary residential caretaker and legal custodian." On June 24, 1993, appellee filed a motion for modification in which he sought a shared-parenting plan which incorporated the visitation guidelines of Cuyahoga County. In response, appellant filed a motion for shared parenting which continued visitation according to the Portage County guidelines. The matter then came on for hearing; however, there was no evidence presented to show a change in circumstances compelling a modification and absolutely no evidence presented to demonstrate that a modification was in the best interest of the child. It is also apparent that the parties' relationship has deteriorated to such a serious extent that cooperation between them is highly unlikely. Accordingly, we conclude that the trial court erred in implementing a shared-parenting plan in this instance.

The fourth assignment of error is well taken.

The judgment is affirmed in part and reversed in part, and the cause is remanded so that the trial court can calculate a Social Security setoff from the marital portion of appellant's PERS interest, and for additional findings as to the Northwest Life Insurance policy.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

NAHRA, J., concurs.

MATIA, P.J., concurs in part and dissents in part.

DAVID T. MATIA, Presiding Judge, concurring in part and dissenting in part.

While I concur in large part with the majority's opinion and analysis, I must respectfully dissent from the majority's judgment on two issues. First, while I agree that the trial court abused its discretion in failing to consider defendant-appellee's Social Security contributions in its marital pension calculation, I do not agree with the majority's instruction to the trial court to employ the "hypothetical Social Security benefit" formula as a means of evaluating the marital pension.

As the majority notes, there are a number of different formulas which have been used by different appellate districts in Ohio. This is due in large part to the fact that an equitable distribution of pension or retirement benefits must be based on the unique facts and circumstances of each case. See *Hoyt v. Hoyt* (1993), 53 Ohio St.3d 177, 559 N.E.2d 1292. Accordingly, I would refrain from

instructing the trial court to employ the hypothetical Social Security benefit and, instead, allow the trial court to decide the manner in which it wishes to evaluate both parties' pensions under the facts and circumstances of this case. That this case has been to this court twice before on unrelated issues is of no consequence.

Finally, I disagree with the majority in its finding that appellee failed to prove that the $16,000 given by his mother was a gift. In this case, plaintiff-appellant argued that the $16,000 was a loan repaid from her premarital assets, *i.e.*, fee referral. Thus she argues that the trial court erred in failing to compensate her for the repayment.

However, defendant-appellee testified, as did his mother, that the $16,000 was a gift to the couple which did not have to be repaid. Additionally, defendant presented a mortgage application document that listed the money as a gift from defendant-appellee's parents that did not have to be repaid.

It is well established that a reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 635 N.E.2d 308. Moreover, a reviewing court must be guided by the presumption that the findings of the trial court are correct. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 632 N.E.2d 1358.

With the conflicting evidence presented at trial concerning the $16,000 and given that the weight of the evidence and the credibility of the witnesses are primarily within the province of the fact finder, *Perusek v. Perusek* (Apr. 18, 1996), Cuyahoga App. No. 69299, unreported, 1996 WL 191758, I cannot agree with the majority that the trial court's decision was unreasonable, arbitrary, or unconscionable.

For the above stated reasons, I concur in part and respectfully dissent in part.