JOURNAL ENTRY AND OPINION
In this appeal, appellant John A. Kramer raises ten assigned errors[1] challenging the trial court's valuation and distribution of the marital, estate in this divorce action. The trial court used the divorce filing date, March 1995, as the de facto termination date to value the parties' two homes and used the date of separation July 1990, as the de facto termination date to value the remaining properties in the marital estate. Appellant argues the trial court's use of different termination dates is an abuse of discretion. We disagree and affirm the trial court's decision. The trial court is not required to use the same de facto termination date consistently in valuing the properties of the marital estate when the trial court has adequately explained its reasoning for deviating. Cottage v. Cottage (June 13, 1997), Trumbull App. No. 96 T-5412, unreported, citing Berish v. Berish
(1982), 69 Ohio St.2d 318 and Miller v. Miller (May 24, 1996), Geauga App. No. 95-G-1942, unreported. The apposite facts follow.
The magistrate tried this matter on July 11, 1996 and for three days in September 1996. The magistrate determined and the trial court agreed that the parties separated July 1990 and they filed the divorce March 1995. The trial court then valued the real estate properties as of March 1995 and the remaining properties as of July 1990. The trial court reasoned that appellee Judy Kramer should recoup $10,000 for monies she paid to improve the couple's Vincent Street property and for her payment of half the monthly mortgage on the East Washington Street property.
When the Kramers separated, appellee moved into the Vincent Street property and appellant remained in the East Washington Street property. The parties continued their history of sharing half the mortgage payments on the two homes. While at the Vincent Street property, appellee made improvements that totaled $10,000, which included building a new garage, a gas line to the house, a new gas furnace, a water heater, landscaping, and replacing window sills.
The trial court made the following conclusions:
Vincent Street: $125,000 — 2,522.00 = $122,478
Washington Street: $163,000 — 52,000 + 6,400 = $104,445
To balance the real estate award between the parties, the court made the following computations to determine the real estate interests of each party:
 $122,478 Vincent Street Property (with $10,000 excluded) -104.600 Washington Street Property ________ Difference in property values $17,878
 $ 17,878 Divided by 2 for each party's ÷ 2 interest. ________ $ 8,939
Based on this calculation, the trial court awarded appellant a mortgage on the Vincent Street property in the amount of $8,939 at a rate of 5% per annum after the first year of the mortgage. This a rate of 5% per annum after the first year of the mortgage. This mortgage is due and payable upon the sale of the property or three years after journalization of the divorce decree, whichever occurs first.
The trial court valued the parties' retirement funds/pretax dollars as of July 1990 reasoning that the de facto termination of the marriage or the permanent separation occurred at that time. While the parties acknowledged that they had joint car insurance and appellee retained appellant on her health insurance, the trial court determined from the parties' testimony that these actions did not rise to a level of a continuing relationship but were economical. Appellant's testimony that they had attempted to reconcile was disputed by appellee and not given credence by the trial court.
The dollar values of the retirement funds/pretax dollars were provided by David Kelley, an expert in pension evaluation. The parties retained his services and stipulated to his use as an expert. The trial court then awarded appellee her tax deferred annuity and her STRS free and clear of any claims by appellant. The trial court valued STRS with COLA as of 1990 at $112,954. The trial court valued appellant's annuity at $3,445. The trial court awarded him his Gould pension, valued at $2,678, his Cleveland Clinic pensions valued at $24,932, and $7,783 free and clear of any claims by appellee. After determining that appellee had pension benefits in excess of appellant, the court ordered her to pay him $250 a month for fifty months through the Cuyahoga Support Enforcement Agency (CSEA).
The trial court did not value the cars and personal items but awarded them to the parties on an equitable basis. However, appellant-offered a considerable amount of testimony related to the appellee's bank accounts. Appellee testified that these were funds for their two children's college education. She further testified that all of these funds were expended on their education. Appellant countered her testimony by stating that they received more money on the children's education than was spent. He also alleged that these funds were actually money that she had "squirreled away" rover the years. The trial court did not attach any weight to his "testimony.
The trial court determined that two U.S. Treasury Bonds purchased by appellee in February 1993, having a value of $5,000 each, were her separate property free of any claims by appellant. Appellant's father gave him a gift of a $10,000 Certificate of Deposit in December 1996, which the trial court awarded to him free and of any claims by appellee.
In his first assigned error, appellant argues the trial court abused its discretion when it failed to use the same valuation dates for the entire estate. Historically, the Ohio courts have held that the trial court must be permitted to utilize alternative valuation dates in order to achieve a truly equitable award.Berish at 19. The trial court chose two de facto termination dates. Appellate courts have held that without the consent of the parties, the trial court should use the same dates consistently in valuing the estate or adequately explain why it deviated. Cottage
at 7.
Here, the magistrate pointed out that it was only fair to use the March 1995 date to value the houses because that date would encompass appellee' s improvement dollars and acknowledge that both had continued to pay the mortgages on the property. "As the parties shared the cost of both parcels of real estate until about the time of filing, it would seem equitable to value the real estate as of a more current date." (Magistrate's decision of March 31, 1997 at 4.) The magistrate further explained:
 "It would be equitable to attempt to value the real estate as of approximately 1995, but to give the plaintiff "credit' for $10,000 worth of separate equity for the improvements she made prior to that time."
(Magistrate's decision of March 31, 1997 at 5.)
The magistrate clearly explained his reasons for valuing the retirement/pretax dollars as of 1990:
 "The retirement funds are being valued as of separation for the reason that, in essence, the marriage ended as of separation excepting for the agreement the parties had pertaining to their real estate, and to maintaining insurances in both names.
Id.
It is no doubt that under Cottage, a trial court's failure to explain why it deviated is an abuse of discretion and warrants a reversal. However, that is not the case here. The trial court sustained the magistrate's conclusions regarding these issues. The deviation in valuation dates was thoroughly explained. These dates were selected to promote equity and were logically related to the facts of this case.
Appellant also argues that the trial court abused its discretion in using the July 1990 date. He argues that they were still living as husband and wife. However, the record does not support his allegation. Appellee testified categorically that she moved out of the East Washington house into the Vincent Street house in July 1990-and remained there.
Appellants, however, argues that she carried him on her health and car insurance policies. Appellee does not deny that she did this. However, she urges that this was done solely because he was out of work and for no other reason.
Appellant argues that appellee's continued payment of half the monthly mortgage on the East Washington Street property validated that the relationship existed past July 1990. The trial court failed to give this testimony credence and concluded that appellee was merely protecting her investment not continuing the marriage. Consequently, appellant's first assigned error is overruled.
In his second assigned error, appellant argues the trial court abused its discretion when adopting a March 1995 valuation date for the parties' real properties when said valuation dates do not appear in the record. In this regard, appellant is mistaken. The March 1995 valuation date of the houses does appear in the record, as evidenced by the following:
 Q. Sir, just a second. Do you have an opinion as to what would be the reasonable market value of those two houses since you are one of the owners as of March of 1995?
A. Yes. Based on —
Q. What would that be?
 A. 150,000 for the Washington Street house; 135,000 for the Vincent Street house. Based on yet another separate group of appraisals, three or four other separate appraisals that were approved by both Judy and myself. In other words, we paid equally for those appraisals.
* * *
 The Magistrate: That was as of what date? March of ____ when is this?
 A. '95. March, '95. File date versus trial date.
 The Magistrate: It was 155,000 for East Washington and 135,000 for —
 A. On the file date its's 150 for the Washington Street house, 135 for the Vincent Street house. This is file date, '95.
(Tr. 446-447.)
While the Magistrate did not solely rely on appellant's testimony in valuing the real properties, his assertion that a March 1995 valuation does not appear in the record is simply not true.
The trial court is required to have a "rational evidentiary basis for assessing * * *" the value of property. Orley v. Orley (December 12, 1996), Cuyahoga App. No. 69622, unreported. However, a flat rule to determine value cannot be established as equity depends on the totality of the circumstances." Briganti v.Briganti (1984), 9 Ohio St.3d 220, 222. Further, an appellate court cannot dictate the means by which the trial court is to value a property. Orley. Instead, "a reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion." Briganti at 221. The properties were valued at the divorce filing date, March 1995, because appellee continued to pay the mortgages.
Both parties entered into evidence the appraisals on the properties. Appraisals were provided for the years 1994 and 1996. The value the trial court assigned to the properties was reached by averaging the figures submitted. The trial court valued the property based on the testimony and evidence submitted by the parties. Considering the facts and circumstances of the case, we find there was no abuse of discretion. The second assigned error is overruled.
In his third assigned error, appellant asserts that the trial court was required to equitably divide the marital portion of the appreciation in the parties' houses. Appellant argues the use of separate valuation dates requires that the trial court treat any subsequent appreciation as separate property. R.C. 3105.171
(A) (6) (b) states that "the commingling of separate property with other property does not destroy the identity of the separate property, except when the separate property is not traceable."Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence to trace the asset to separate property." Id., quoting Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. Appellant did not submit evidence tracing the funds "he now seeks to regard as "separate." Without this evidence, the current enhanced market value of the homes cannot be traced to his separate investment. Munroe.
Further, the facts in Munroe are not in evidence in this case. In Munroe, this court ruled the trial court erred when it did not award the husband the value of the appreciation on the marital home. The court based its decision on the fact that the husband had purchased the property prior to the marriage. As the down payment was premarital, the court found it was the husband's separate asset. "It is a matter of economic certainty that some of the current enhanced market value of the home was traceable to the original down payment twenty-one years earlier." Munroe. In the case sub judice, both of the homes were purchased during the course of the marriage. Appellant did not make a premarital down payment on either home. Nothing in the record indicates, nor does appellant allege, that the down payments were made from his own separate funds as defined by R.C. 3105.171 (A) (6) (a) (iii). The trial court found that the parties had continued to pay on the mortgages after the separation. The homes were valued as of March 1995. This rate took into consideration the homes' appreciation in value from the time of their purchase until the time of the divorce filing in March 1995. Accordingly, the trial court's division of the parties' interests in these properties includes these increased values. The trial court divided the property in a manner that was equitable and fair' under the facts and circumstances of the case. There was no abuse of discretion. Consequently, appellant's third assigned error is overruled.
The ruling in Munroe applies equally to the appellant's fourth assigned error. Here, appellant argues that the trial court abused its discretion in granting appellee a $10,000 home improvement credit on the Vincent Street property. Under R.C. 3105.171, separate funds do not lose their identity as separate merely because they have been commingled. Where undisputable evidence traces separate funds to marital property, it is an abuse of discretion to fail to award the property to the party arguing the funds are separate. Neel v. Neel (1996), 113 Ohio App.3d 24, 33. Appellee testified regarding the improvements she made to the Vincent Street property. These improvements were made after the separation in July 1990. She built a new garage, put in a new fence, installed a new hot water heater, a new furnace, and a new gas line, and had extensive landscaping performed. She testified that the total cost of these improvements was over $20,000. This is well over the amount of the $10,000 credit. Consequently, appellant's fourth assigned error is overruled.
Appellant's fifth assigned error argues the trial court abused its discretion in not assigning a value to personal property and distributing each item of personal property. His sixth assigned error is similar to his fifth and will be discussed together. He argues that he was damaged when the trial court failed to assign a value to the 1988 Honda awarded to appellee. R.C. 3105.171 (F) requires the court to consider a number of factors when dividing marital property and making distributive awards. R.C. 3105.171 (G) requires the court to make findings of fact that support its determinations as to how the property is to be divided. "When reviewing the trial court's marital property division, the reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion in fashioning the award." James v. James (1995),101 Ohio App.3d 668, 680, citing Focke v. Focke (1992), 83 Ohio App.3d 552,555. A review of the record indicates the court acted within its discretion.
R.C. 3105.171 requires the trial court to divide the property equitably between the parties. James at 680. The only evidence submitted by the parties regarding the value of the personal items was based on their own research. They did not submit testimony or appraisals from experts regarding their value. The court did not seek further evidence of their values because the property was not divided between the parties. Appellee volunteered while on the stand to give it all to appellant. The trial court did as she suggested. Appellant received all of the personal property acquired between March 7, 1965 and August 1990. This would include all personal property purchased by either of the parties during the marriage, prior to the time of separation. The property was not divided. Appellant received all of it without objection from appellee. Therefore, the trial court had no reason to value the property or to adopt findings of fact. It did as appellee requested and appellant received everything. The court inPawlowski v. Pawlowski (1992), 83 Ohio App.3d 794, stated:
 R.C. 3105.171 could be construed to required the court to place a monetary value on every piece of personal property owned by a party or by the parties jointly in divorce proceedings. The code section does not indicate that this affixing of a value can be waived or avoided under any circumstances. * * *
 One of the maxims of statutory construction is that the legislature will be presumed not to have intended an absurd result.
Id. at 799. Consequently, appellant's fifth and six assigned errors are overruled.
Appellant argues in his seventh assigned error that the trial court was obligated to order interest accrual at the rate of 10% per annum on the Vincent Street property mortgage. He argues that R.C. 1343.03 makes this amount of interest mandatory on any monetary award, citing Woloch v. Foster (1994), 98 Ohio App.3d 806
for his authority. However, the Ohio Supreme Court has refused to rule that this statute applies to cases involving the division of marital property. Koegel v. Koegel (1982), 69 Ohio St.2d 355, 358. Instead, it limits the application of the statute to "obligations that are due and payable, and the obligation here will not become due and payable until the occurrence of a future event." Id. The mortgage in this case is not due until the property is sold or three years from the journalization of the divorce decree. Therefore, the trial court was free to assign an interest rate it believed was equitable under the circumstances. Id. at 357. We can find no abuse of discretion. Appellant's seventh assigned error is overruled.
Appellant's eighth assigned error restates the first error and for those reasons is overruled.
Appellant argues in his ninth assigned error that the trial court disregarded "concrete, credible, and uncontroverted evidence concerning the plaintiff's multiple and various bank accounts and in failing to include said accounts as marital assets." The trial court did entertain evidence regarding a number of bank accounts in appellee's name. However, the origin of these accounts and their purpose was not "uncontroverted." Appellee explained that the money in the accounts came from college financial aid, grants, money that she saved, or as a gift from her mother. She also explained that all of the money was used to send their two children to college. Appellant made a number of assertions regarding these accounts. All of "them were vague. He attempted to persuade the court that the money came from some other source than that explained by appellee, though he never clearly explained from what source. He also implied that not all of it was used for college, though he never clearly proved that it wasn't. He also objected to her saving money from her salary and using it to send his children to college. The trial court reviewed the testimony of both parties and found appellee to be persuasive. "The general principle of law on judging credibility is that the credibility of witnesses and the weight of the evidence are matters to be determined by the trier of facts." Simoni v. Simoni (1995), 102 Ohio App.3d 628, 634. The trial court judged appellee as being truthful. Appellant has brought nothing before this court which causes us to question the judgment of the trial court; the trial court did not have an abuse of discretion. Appellant's ninth assigned error is overruled.
Appellant argues in his tenth assigned error that a clerical error led to the court's valuing appellee's STRS pension at a lower amount than it was actually worth. However, he never clearly states what clerical error was made. He points out that appellee's exhibit 3 shows her STRS pension to be worth $66,762.92. This is true, it does. Mr. David Kelley, the expert that was used and stipulated to by both of the parties, valued appellee's STRS pension, with a non-COLA value at $66,762.92 in 1996. He fails to make clear how the information shown on this exhibit incorrectly impacted the trial court's decision.
He also argues that the trial court's determination constituted an abuse of discretion under this court's decision in Neel. However, as he points out, in Neel this court does not establish one method to be used in all cases. Instead, we applied a method we found to be the most equitable under the circumstances of that case. We do not rule that this method is to be used in all cases. In Neel, the wife's public pension was valued at its then current rate. Hypothetical social security benefits at what would have been their present day value were then deducted from the amount of the public pension. Id. at 30-31. However, there is no discussion in Neel showing that the parties had lived separate lives for five years prior to the divorce hearing as we have in this case. The trial court in the case sub judice determined it would be inequitable to use current values of parties' retirement funds. This has been discussed above in the first assignment of error. Therefore, the fact that the wife's plan increased in the years following the separation, and that those monies will not be shared with appellant, has already been settled. The trial court used a method of valuation it deemed to be most equitable under the circumstances. Upon reviewing the facts and circumstances of this case, we do not find an abuse of discretion. Consequently, appellant's tenth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, P.J., and KILBANE, J., CONCUR.
 __________________________________ PATRICIA ANN BLACKMON JUDGE
[1] See Appendix.
 APPENDIX
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED IN ADOPTING "DURING THE MARRIAGE" AS THE PERIOD FROM THE DATE OF THE MARRIAGE TO MARCH 19, 1995 AND THEN SELECTING DIFFERENT DATES FOR THE VALUATION AND DISPOSITION OF MARITAL PROPERTY.
 II. THE TRIAL COURT ERRED IN ADOPTING VALUATION DATES OF THE PARTIES' REAL ESTATE WHEN SAID VALUATION DATES DO NOT APPEAR IN THE RECORD.
 III. THE TRIAL COURT ERRED IN FAILING TO EQUITABLY DIVIDE THE MARITAL PORTION OF THE APPRECIATION IN THE PARTIES' REAL ESTATE.
 IV. THE TRIAL COURT ERRED IN GRANTING THE PLAINTIFF A $10,000.00 "HOME IMPROVEMENT CREDIT".
 V. THE TRIAL COURT ERRED WHEN IT "FINDS IT IMPOSSIBLE TO PLACE AN ACCURATE VALUE ON MARITAL "PERSONAL PROPERTY" AND THEN MAKES A DISPOSITION OF THE PROPERTY.
 VI. THE TRIAL COURT ERRED IN AWARDING THE WIFE A 1988 HONDA WITHOUT AFFIXING A VALUE TO SAME.
 VII. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE HUSBAND IN NOT PROVIDING FOR LEGAL INTEREST ON A MORTGAGE [JUDGMENT] DUE TO THE HUSBAND.
 VIII. THE TRIAL COURT ERRED IN MAKING A DISTRIBUTIVE A WARD RELATIVE TO THE PARTIES' REAL ESTATE IN THE SUM OF $8,900.00 WITHOUT ANY FACTUAL BASIS FOR SAME.
 IX. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN DISREGARDING CONCRETE, CREDIBLE AND UNCONTROVERTED EVIDENCE CONCERNING THE PLAINTIFF'S MULTIPLE AND VARIOUS BANK ACCOUNTS AND IN FAILING TO INCLUDE SAID ACCOUNTS AS MARITAL ASSETS.
 X. THE TRIAL COURT ERRED IN THE DIVISION OF THE WIFE'S STRS RETIREMENT PENSION AND AETNA ANNUITY.