OPINION
{¶ 1} Both parties have raised issue with the divorce decree provisions concerning the division of various assets. Appellant also challenged the lower court's support rulings. For the reasons discussed below, the judgment of the Trumbull County Court of Common Pleas, as to appellant, is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion. As to appellee's cross-appeal, the lower court's decision is affirmed.
 {¶ 2} On December 31, 1998, James DeChristefero filed a complaint for divorce, seeking to end his marriage to Nancy DeChristefero. On January 5, 1999, Nancy DeChristefero counterclaimed for divorce. The parties married on July 14, 1979. Two children were born as issue of the marriage. Abbey was born on June 8, 1984 and Alyson was born on October 3, 1988. The parties separated on July 21, 1998.
 {¶ 3} On February 11, 1999, the magistrate issued an order pendente lite, finding that James DeChristefero earned approximately $54,431, from all sources, while Nancy DeChristefero earned approximately $6,000 per year. James DeChristefero was ordered to pay Nancy DeChristefero $790 per month, as well as pay a number of household expenses. On March 15, 1999, James DeChristefero filed a motion requesting that the amount of spousal support, child support, and division of debt be reduced due to a significant change in circumstances.
 {¶ 4} On July 12, 1999, the parties entered into an agreed judgment entry. The entry valued James DeChristefero's State Teachers Retirement Pension at the present value of $58,269.77, of which 96% was marital. The parties' joint account at Janus had a current balance of $30,267.02. Nancy DeChristefero was to retain the Janus account free and clear of any claim by her husband. The final offset to equate the two values in the assets was to occur on or before the final hearing.
 {¶ 5} The matter came for hearing before the trial court on August 3, 4, and 9, 2000. John Tricomi testified that the marital residence was valued at $150,000. That figure included the land, improvements, and total property value. The market value of the land alone was $18,000. Site improvements to the land added $5,000 to that amount for a combined land value of $22,900. An addition to the house increased the value of the residence by $22,900.
 {¶ 6} Rose DeChristefero, James' mother, testified that she and her husband purchased real estate in Niles on Belle Terre Avenue and told their son he could build a house on the site. The land was deeded to the parties in 1991. Rose DeChristefero testified that her family owned and ran the Niles Monument Company for many years. Her parents conveyed an undivided half-interest in the property to her and the other undivided half interest to James DeChristefero in 1983 and 1984. The building housing the company was destroyed in a 1985 tornado. At that point, the DeChristeferos decided to build a four-unit retail commercial building on the property. Abbey Center was completed in August of 1986. The Niles Monument Company occupied one of the units of the building. Abbey Center was the property of the Niles Monument Company.
 {¶ 7} Rose DeChristefero deeded her portion of the retail property to her son on February 5, 1993. Rose DeChristefero stated she decided to cash out her capital contributions to the business. She claimed to have received separate payments totaling $105,000, constituting the return of her capital contributions.
 {¶ 8} James DeChristefero testified he built a house on the Niles property owned by his parents in 1978, prior to his marriage. James DeChristefero stated he used money saved from his earnings and lifetime gifts from his parents and grandparents to pay for the costs of building the residence. James DeChristefero stated he and his father did most of the work themselves, or friends and acquaintances helped in the construction, thereby significantly lowering the cost of building the home. He claimed he always considered the home to be his alone, and not marital property. James DeChristefero maintained that he owned the house but not the land. That property was deeded to him and his wife at a later date.
 {¶ 9} James DeChristefero also testified that he and his mother were partners in the Niles Monument Company. His mother eventually cashed in her capital contributions and gifted him with the remainder of her interest in the business. Rose DeChristefero also deeded the commercial property to him. He denied buying his mother's interest in the partnership. James DeChristefero stated he closed the Niles Monument Company in February of 1999, after he became too ill from depression to continue running the business and teaching.
 {¶ 10} Nancy DeChristefero testified that her husband was the primary source of income during the marriage. She now worked thirty-five hours a week, earning $7.21 per hour. Nancy DeChristefero stated her only retirement benefit was Social Security.
 {¶ 11} On April 30, 2001, the trial court issued its judgment entry. The trial court granted the divorce. The court found James DeChristefero had an income of $53,300 a year. $43,000 of that total represented his teacher's salary with the remainder being rental income from Abbey Center. The court stated the parties stipulated that James DeChrisefero would retain his State Teachers Retirement System pension, valued at $58,269.77, while Nancy DeChristefero would retain the Janus account, valued at $30,267.02. The court found James DeChristefero owed his wife the net sum of $14,001.38 to complete an equal division of these marital assets. The court found that the parties' residence and land was marital property. The court further found that the Abbey Center property was not marital property. Both parties have appealed from this judgment.
 {¶ 12} James DeChristefero assigns the following errors for review:
 {¶ 13} "[1.] The trial court committed reversible error by failing to recognize the uncontroverted and unchallenged evidence of appellant tracing and realizing the passive appreciation of his separate property asset.
 {¶ 14} "[2.] It is reversible error for a trial court to fail to reduce the value of the coverture portion of appellant's state teachers retirement system pension by the corresponding social security component when determining the marital property nature of this asset.
 {¶ 15} "[3.] The trial court committed error by failing to determine the actual incomes of the parties and further committed error by not setting a March 14, 1999 effective date for the proper modified pendente lite spousal support and child support awards."
 {¶ 16} Nancy DeChristefero assigns the following error for review:
 {¶ 17} "[1.] The trial court erred in refusing to determine that the commercial property known as Abbey Center, was a marital asset."
 {¶ 18} In his first assignment of error, James DeChristefero challenges the determination by the trial court that the home in Niles, Ohio, was marital and not separate property. James DeChristefero asserts he built the residence prior to the marriage, using his own funds to pay for the construction. James DeChristefero maintains he provided testimony, receipts, and documents sufficient to trace the monies used to build the dwelling on land then owned by his parents.
 {¶ 19} In divorce proceedings, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the trial court generally must disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (C). An increase in the value of separate property caused by the contribution of either spouse, whether by monetary, labor, or in-kind means, is deemed to be marital property.Middendorf v. Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403. Appreciation, resulting from an increase in the fair market value of property, is considered passive income and remains the separate property of the spouse. Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536.
 {¶ 20} An appellate court applies a manifest weight of the evidence standard of review to a trial court's designation of property as either martial or separate. Barkley v. Barkley (1997), 119 Ohio App.3d 155,159. Therefore, the judgment of the trial court will not be disturbed upon appeal if supported by some competent, credible evidence. Fletcherv. Fletcher, 68 Ohio St.3d 464, 1994-Ohio-434.
 {¶ 21} Spouses can change the nature of the property through their conduct during the marriage. Moore v. Moore (1992), 83 Ohio App.3d 75,77. However, the commingling of separate property with marital property will not destroy the identity of the separate property if that property remains traceable. R.C. 3105.171(A)(6)(b); Peck v. Peck (1994),96 Ohio App.3d 731. "[T]raceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property." Id. at 734. See, also, Okos v. Okos
(2000), 137 Ohio App.3d 563. The party seeking to have a certain asset characterized as separate property bears the burden of proof by a preponderance of the evidence standard. Boyles v. Boyles (Oct. 5, 2001), 11th Dist. No. 2000-P-0072, 2001 Ohio App. LEXIS 4520. However, the party asserting a gifted interest must prove such interest by clear and convincing evidence. R.C. 3105.171(A)(6)(a)(vii).
 {¶ 22} In its judgment entry, the trial court found that James DeChristefero's parents originally owned the land upon which the house was build. The parties married on July 14, 1979. Structures were built between August 1, 1978 and August 14, 1991. On August 14, 1991, James DeChristefero's parents deeded the property to the parties.
 {¶ 23} James DeChristefero testified he built the home, beginning in the summer of 1978. He claimed to have accumulated the funds used to construct the home from savings he acquired from working and gifts throughout his life from his parents and grandparents. James DeChristefero pointed out he had been working for two years as a teacher before beginning construction. James DeChristefero claimed he always referred to the house as his, a statement his wife found upsetting.
 {¶ 24} James DeChristefero provided extensive documentation of the expenses incurred by the construction of the Niles residence. All are dated prior to the couple's marriage. James DeChristefero identified the source of the funds as his own money. An examination of the documentation provided by James DeChristefero shows that the invoices and documents are in the name of James DeChristefero, but father and son shared the same name. James DeChistefero did not provide any evidence from the banks or financial institutions involved to verify or substantiate that the source of the money was his funds, and not monies belonging to his father. His parents clearly owned the land until 1991, when they gave the property to both parties. The residence was constructed well before the date of the transfer. James DeChristefero gave no testimony or documentation showing he paid any of the property tax for the residence, including any increase due to the addition of a structure on the land.
 {¶ 25} Further, he testified that the source of some of the funds, used to finance the construction of the home, were from family gifts. He provided no further evidence regarding the alleged gifts. Separate property, which is gifted to a party, must be proved by clear and convincing evidence. James DeChristefero's testimony is not enough to meet this standard by itself.
 {¶ 26} The trial court was in the best position to evaluate the evidence provided by James DeChristefero and determine his credibility. The trial court essentially ruled that James DeChristefero did not build the house with his own funds prior to the couple's marriage. The record shows that James DeChristefero failed to meet his burden of showing that the house is his separate property. James DeChristefero's first assignment of error is overruled.
 {¶ 27} In his second assignment of error, James DeChristefero argues that the trial court committed reversible error by not reducing the value of the coverture portion of his State Teachers Retirement System (STRS) pension by the corresponding Social Security component in determining the marital portion of the pension. James DeChristefero contends that, when one spouse has a government pension without Social Security benefits and the other spouse earned Social Security benefits, the part of the government pension that is in lieu of Social Security benefits is shielded from division. James DeChristefero maintains that the trial court was obligated to compute a hypothetical Social Security benefit and deduct the present value of that amount from the present value of his STRS benefit. James DeChristefero posits that this calculation must be performed prior to the determination of the marital portion of the STRS, which is then subject to division.
 {¶ 28} Generally, pension or retirement benefits earned during the course of a marriage are marital assets to be considered when dividing marital property. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177. An appellate court applies an abuse of discretion standard of review to a trial court's decision regarding the division of retirement assets. Levine v.Levine (Sept. 3, 1999), 4th Dist. No. 98 CA 34, 1999 Ohio App. LEXIS 4209.
 {¶ 29} State courts cannot divide Social Security benefits, allocated pursuant to federal statute, but should consider these benefits when making an equitable division of a parties' marital property. Walkerv. Walker (1996), 112 Ohio App.3d 90. This can create an inequity when one spouse contributes to the Social Security System and the other spouse to a government pension system. Public employees, contributing to a government pension system, may be penalized because the portions of their pension equivalent to Social Security contributions are marital property subject to division, while their spouse's contributions to Social Security are not marital property under federal statute. Id. Even so, a court should evaluate and consider a spouse's Social Security benefits when equitably distributing the parties' marital assets. Id. Courts have recommended that a domestic relations court compute the present day value of a Social Security benefit, which the spouse contributing to the public pension plan would have received if contributing to Social Security. That value should then be deducted from the present value of the public pension benefit to derive a figure for the marital portion of the pension. Neel v. Neel (1996), 113 Ohio App.3d 24.
 {¶ 30} When no evidence is offered by the parties showing the value of either of the spouse's Social Security benefits, the trial court should direct them to submit the evidence. A trial court's failure to make specific findings about the court's treatment of the Social Security benefits in reaching a property division order constitutes an abuse of discretion. Simon v. Simon (Feb. 12, 1999), 6th Dist. No. S-98-044, 1999 Ohio App. LEXIS 408.
 {¶ 31} "In an Agreed Journal Entry of July 12, 1999, the parties agreed that the present value of James DeChristefero's STRS pension is $58,269.77 and that the present value of the Janus account is $30,267.02. Notably, this Entry purports to be a "partial property settlement" of certain assets, i.e., the STRS pension and the Janus account. No mention is made of either parties' Social Security benefits. Given the limited scope of the Entry, it is clear that the parties did not intend this entry to be a comprehensive settlement of all marital pensions and retirement accounts. The parties' silence as to the value of Social Security benefits is evidence that the parties did not intend the Agreed Journal Entry to encompass the valuation of those benefits.
 {¶ 32} The Agreed Journal Entry further states that "[t]he final offset to equate the two values in the assets shall occur on or before the final hearing." As such, the parties seem to suggest that the difference in value between the STRS pension and the Janus account would be harmonized in the final distribution of marital property, after the value of other marital assets, including the Social Security pensions, had been accounted for."
 {¶ 33} In examining the methods courts have applied to equitably divide pension assets, we find that the formula used in Neel, supra, is the best method. Neel followed Cornbleth v. Cornbleth, 397 Pa. Super. 421,427, 580 A.2d 369, in determining the process of evaluating the computations to be applied when equating public pension participants and Social Security participants. Cornbleth stated that the present value of a Social Security benefit must be computed had the public plan participant been participating in the Social Security system. This present value is then deducted from the present value of the public pension. A figure for the marital portion of the pension then can be derived and included in the marital estate for distribution purposes. The Neel court found this method to be the most thorough and the most equitable under the circumstances. We find that James DeChristefero's pension should be evaluated by the method followed in Neel to determine the proper division of the asset.
 {¶ 34} Further, Nancy DeChristefero testified that she contributed to the Social Security System. There is no evidence regarding the value of those benefits, nor were the benefits ever discussed or determined below. Also, there was no evidence or testimony about any Social Security benefits James DeChristefero may be entitled to receive based upon his earnings from the Niles Monument Company or any other source during the marriage. The present value of any Social Security benefits James DeChristefero is to receive, if any, should be added to the present value of the amount determined to be the Social Security benefit he would have received had he participated in that system instead of STRS. The court abused its discretion by failing to make any findings with regard to the parties' Social Security benefits. The parties' pension benefits must be determined as stated above, without any offset as to the value of the Janus account. That asset is to be included in the property settlement, for division along with the other marital assets. James DeChristefero's second assignment of error is well taken.
 {¶ 35} In his third assignment of error, James DeChristefero argues that the order of the magistrate awarding pendente lite spousal and child support showed an inaccurate income for him, resulting in too high of an award. James DeChristefero also claims that the closure of the Niles Monument Company in February of 1999 substantially reduced his income. He maintains that, following the closing of the company, he filed a motion to modify or reduce spousal and child support and to change the division of debt. James DeChristefero submits that the failure of the court to address his motion prior to the final hearing led to confusion as to when the pendente lite modified order should have taken effect. He contends his modified obligation should have begun on April 22, 1999, the date of the first scheduled hearing on the matter.
 {¶ 36} A magistrate's temporary pendente lite order is not a final, appealable order. Rather, any claim of prejudicial error with respect to an interlocutory order may be reviewed on appeal after a final judgment is entered in the case in which the interlocutory order was entered. Mekker v. Mekker (Dec. 23, 1999), 11th Dist. Nos. 98-P-0006, 98-P-0007, and 98-P-0100, 1999 Ohio App. LEXIS 6273.
 {¶ 37} A court may award reasonable spousal support to either party during the pendency of a divorce proceeding. R.C. 3105.18. The purpose of such an award is to preserve the status quo during the proceeding. DiLacqua v. DiLacqua (1993), 88 Ohio App.3d 48. The interim orders will merge with the final judgment and the right of action or enforcement of the interim order does not extend beyond the final decree. Colom v. Colom (1979), 58 Ohio St.2d 245.
 {¶ 38} Civ.R. 75(N) provides that the court or magistrate may grant spousal and child support pendente lite to either party when requested in the complaint, answer, or counterclaim, or by motion served with the pleading. The other party may file counter affidavits within fourteen days from service of the complaint, answer, counterclaim, or motion. Upon written request, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order. See Biscello v. Biscello (May 4, 2000), 10th Dist. No. 99AP-172, 2000 Ohio App. LEXIS 1926. The award and the amount of temporary alimony is a matter resting within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.Dillon v. Dillon (Dec. 6, 1991), 4th Dist. No. 90CA33, 1991 Ohio App. LEXIS 6053.
 {¶ 39} The magistrate issued the pendente lite order on February 11, 1999. James DeChristefero did not file opposing affidavits or objections within fourteen days of that order. Instead, he filed a motion to modify on March 15, 1999, basing the motion on a change in circumstances. Although scheduled for hearing a number of times, no actual hearing was held on the motion. According to Civ.R. 75(N), the trial court or magistrate should have held a hearing on the motion within twenty-eight days of the filing of the motion. Obviously, this did not happen. The only question to be resolved is whether James DeChristefero was prejudiced by the trial court's failure to comply with Civ.R. 75(N).
 {¶ 40} In its judgment entry, the trial court found that James DeChristefero had an annual income from his employment of $43,000 and a net rental income of $10,300. At trial, appellant said the rental income from Abbey Center was $10,300, before expenses were deducted. Two of the units were vacant — one because James DeChristefero terminated the lease of the beauty shop owned by Nancy DeChristefero's sister. Therefore, there is a basis for the finding of a yearly income of $53,300 in the record. This figure was not based upon any earnings from Niles Monument Company, the closing of which constituted the basis for the motion to modify. This is nearly the same income figure used by the magistrate in the pendente lite order. James DeChristefero cannot show he was prejudiced by the failure of the trial court to hold a hearing on his motion prior to trial. James DeChristefero's third assignment of error is overruled.
 {¶ 41} Nancy DeChristefero has filed a cross-appeal from the trial court's judgment. In her sole assignment of error, Nancy DeChristefero argues that the evidence shows James DeChristefero purchased his mother's half-interest in Abbey Center for between $80,000 and $105,000. Nancy DeChristefero maintains that the monies used to purchase Rose DeChristefero's interest in the property were marital, entitling her to one-fourth of the total value of the property.
 {¶ 42} At trial, Rose DeChristefero testified that she cashed in her capital contribution, with the money being paid out of the business accounts. James DeChristefero testified that his mother was paid for her capital contribution in a series of distributions. He traced the transactions from checks paid from various money market accounts, certificates of deposit, Niles Monument Company checks, and wire transfers from Niles Monument Company to the parties' personal checking account which was then paid to his mother. The remainder of his mother's interest was given to her son. James DeChristefero denied ever combining the rental income from the retail property or of Niles Monument Company with the parties' household income.
 {¶ 43} Based upon the evidence submitted at trial, James DeChristefero met his burden of establishing that the funds used to repay his mother her capital contributions came from separate income. The trial court did not abuse its discretion by finding that the Abbey Center was James DeChristefero's separate property. Nancy DeChristefero's first assignment of error is overruled.
 {¶ 44} The judgment of the Trumbull County Court of Common Pleas, as to James DeChristefero, is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. The judgment, as to Nancy DeChristefero's cross-appeal, is affirmed.
DONALD R. FORD, P.J., concurs.
JUDITH A. CHRISTLEY, J., dissents.