This is an appeal from a Washington County Common Pleas Court judgment granting a divorce to Wayne L. Rinehart, plaintiff below and appellant herein, and Joyce M. Rinehart, defendant below and appellee herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE COURT BELOW ERRED BY CREATING A SOCIAL SECURITY OFFSET AGAINST APPELLEES PRIVATE PENSION FROM BROUGHTON FOODS COMPANY."
SECOND ASSIGNMENT OF ERROR:
 "THE COURT BELOW ERRED BY FAILING TO INDICATE THE BASIS FOR ITS AWARD OF TANGIBLE PERSONAL PROPERTY IN SUFFICIENT DETAIL TO ENABLE THE REVIEWING COURT TO DETERMINE THAT THE AWARD WASHINGTON, 98 CA 24 2
 IS FAIR, EQUITABLE AND IN ACCORDANCE WITH LAW."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THE IDENTITY OF AN INSURANCE POLICY TO BE SEPARATE PROPERTY OF THE APPELLEE."
FOURTH ASSIGNMENT OF ERROR:
 "THE COURT ABUSED ITS DISCRETION IN VALUATION OF THE INVESTMENT REAL ESTATE."
FIFTH ASSIGNMENT OF ERROR:
 "THE DETERMINATION THAT APPELLANT MISAPPROPRIATED MONEY IS NOT SUPPORTED BY A SUFFICIENCY OF THE EVIDENCE."
SIXTH ASSIGNMENT OF ERROR:
 "THE DIVISION OF UNSECURED DEBT IS CONTRARY TO LAW AND AN ABUSE OF DISCRETION." SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY CREATING A NEW BENEFIT NOT AVAILABLE FROM APPELLANT'S PUBLIC EMPLOYMENT RETIREMENT SYSTEM PLAN."
A brief summary of the facts pertinent to this appeal is as follows. The parties married in Roanoke, Virginia, on July 2, 1978, and three (3) children were born as issue of that marriage, to wit: Sarah Rinehart (D.O.E. 5-29-84), Timothy Rinehart (D.O.E. 11-6-85) and Amanda Rinehart (7-25-92). On October 3, 1997, appellant filed for divorce alleging that he and his wife were incompatible and that she was guilty of gross neglect of duty. Appellant asked for custody of the minor children as well as an equitable division of their property. Appellee filed an answer and counterclaim which, while denying the allegation of neglect, agreed that they were incompatible and further asked for divorce on the grounds of extreme cruelty. She too requested custody of the minor children as well as an equitable settlement of their property rights.
The matter came on for hearing during which time the parties went into great detail recriminating one another over what they perceived as their respective faults as a spouse. It was uncontroverted that appellee was having an affair with another man although there was some dispute over whether that liaison commenced before, or after, divorce proceedings were initiated. In any event, appellant testified that his wife periodically did not come home at night and (on occasion) would be away for an entire weekend. This absence, he explained, made it increasingly difficult to maintain the household at the same time as coordinating the childrens' various activities. Appellee countered, however, that her husband was too busy with the childrens' "soccer stuff" and did not spend sufficient time helping her "heal a lot of wounds" that were uncovered while she was going through therapy. He also inter alia "hassled" and heaped "guilt" on her for not coming home to be with the family.
Jeanne Schwaner, Ph.D., appellee's therapist, confirmed that appellant abused "male privilege" in the home and subjected his wife to emotional, verbal and economic abuse so severe that the average person would not have been able to "survive" in the household.[1] Dr. Schwaner opined that appellee's self esteem and depression would improve once removed from the marriage and that the minor children should be placed in her custody so that they did not develop skewed "attitudes" toward men, women and family.
After two (2) days of testimony, each side submitted proposed findings of fact and conclusions of law. The trial court entered its own findings on May 19, 1998, determining that the parties were incompatible and ordering that they be granted a divorce on that basis. The court then went on to fashion a distribution of their separate and marital property as well as assign marital debts to be paid by the appropriate party. The court also awarded custody of the minor children to each parent on a rotating basis every two (2) years. Judgment to that effect was entered on June 10, 1998, and this appeal followed.
Before addressing the merits of those errors assigned for our review, we first point out that our analysis has been somewhat hampered by the absence of a recapitulation of assets that were distributed, and debts that were assigned, in either the trial court's findings of fact and conclusions of law or its judgment decree of divorce. Ohio law requires that marital and separate property be divided equitably between spouses. See R.C.3105.171 (B). This requires, in most instances, that marital property be divided equally. Id. at (C) (1). However, if equal division would produce an inequitable result, property must then be divided in such a way as the court determines to be equitable.Id. A recapitulation of the distribution of various assets, as well as the allocation of marital debts, provides invaluable assistance for appellate courts in reviewing whether property was distributed equitably. See e.g. Abu-Nada v. Abu-Nada (Mar. 15, 1999), Clermont App. No. CA98-07-054, unreported; Wolfe v. Wolfe (Jul. 30, 1998), Scioto App. No. 97CA2526, unreported; Hazelback v. Hazelback (Jun. 20, 1986), Huron App. No. H-85-14, unreported. No such recapitulation was set out by the trial court in the cause sub judice. While we readily concede that there is no statute or rule which requires this, the absence of such a computation forces us to review the court's actions with respect to individual property and debts more narrowly than might otherwise have been done. For instance, if an inordinate amount of marital property is distributed to one party over another, that distribution may be offset by a greater allocation of debt or there may be some other reason why such a distribution is equitable. That reason may not be immediately apparent, however, if not shown in a recapitulation or otherwise explained by the trial court. The absence of such an explanation may then lead to the conclusion that the division of assets was erroneous when, in fact, it might not have been. Our concerns on this issue shouldnot be misconstrued as criticism for the trial court. Again, there is no requirement that a recapitulation of assets and debts be set out in the divorce decree. We make known our concerns on this issue solely because (1) it would have been helpful in our review of this case, and (2) as a precatory caveat to some of our rulings infra in this opinion. With that in mind, we turn our attention to the errors assigned for our review.
 I
The first assignment of error goes to the method by which the trial court arrived at a "present value" for the couple's respective pension plans. Appellant is employed by the City of Marietta, Ohio, and has participated in the Public Employees Retirement System (hereinafter referred to as "PERS") since 1981. His wife, appellee, worked for Broughton Foods Co. (hereinafter referred to as "Broughton") from 1980 to 1994 and participated in that company's private pension plan. Neither side submitted any evidence about the value of these plans during the hearing below. They stipulated, instead, that the trial court could consider pension evaluations that would be prepared and submitted thereafter. Those evaluations were ultimately tendered to the court on May 15, 1998, and revealed estimated present values of $5,422.33 for appellee's Broughton pension and $78,044.54 for appellant's PERS. The pension evaluators also computed a hypothetical "social security offset" to be applied against PERS in the amount of $20,053.56. It was explained that appellee, in addition to her private pension, would collect social security benefits whereas her husband was ineligible. A social security offset, applied against appellant's PERS, would level the proverbial playing field by compensating him for social security benefits he would not receive.
The pension evaluations were, apparently, accepted by the trial court. In its eighth (8th) finding of fact, the court ruled that the present value of the PERS, with social security offset, was $57,991.18 (which figure can be derived from the $78,044.54 value assigned by the pension evaluators less the $20,053.36 hypothetical social security offset). The court further opined that the present value of appellee's pension was "5,422.33 without a social security offset." However, the court then determined that it should use "basically the same mathematical computation" with respect to appellee's pension as was used with respect to appellant's PERS. The court thus recalculated the Broughton pension using "a reasonable percentage of social security offset" and arrived at a value of $4,000. Appellant argues that it was error to apply the same sort of social security setoff to his wife's pension as was applied to his PERS. We agree.
Our analysis begins with the proposition that pension benefits acquired by either spouse during the course of the marriage are considered marital property subject to division at the time of divorce. See R.C. 3105.171 (A) (3) (a) (ii); also seeHoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292,1294-1295. This principle seems simple enough until one starts factoring public pensions and social security into the equation. Public employees covered under PERS generally do not pay into social security and do not receive social security benefits. However, a portion of the PERS retirement benefit represents a social security equivalent. It is well settled law that social security benefits cannot be considered marital property and are not subject to division in a divorce. See generally Sowald 
Morganstern, Domestic Relations Law (1997) 332, § 29.10; also seeStreeter v. Streeter (Jul. 30, 1991), Franklin App. No. 9lAP-14, unreported; Gerrard v. Gerrard (Mar. 13, 1990), Clark App. No. 2633, unreported. PERS benefits, including the social security equivalent, are considered marital property and are subject to division. See Levine v. Levine (Sep. 3, 1999), Washington App. No. 98CA34, unreported; Allen v. Allen (Feb. 26, 1998), Scioto App. No. 97CA2498, unreported. This creates a fundamental inequity in dividing a public service pension because social security benefits for the other spouse are left untouched. Baldwins, Ohio Domestic Relations Law (1992) 290-291, § T12.13 (A);also see Levine, supra; Allen, supra. The Pennsylvania Superior Court in Cornbleth v. Cornbleth (Sup. 1990), 580 A.2d 369, 372, derived the following method for dealing with this inequity:
 "To facilitate a process of equating [the public pension] participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the [public pension] participant been participating in the Social Security system. This present value should then be deducted from the present value of the [public services] pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes."
This approach was adopted by the pension evaluators herein and was presumably used by the trial court given that it took the figures set forth in those evaluations verbatim.[2] However, as appellant argues in his brief, the trial court went one step further and subtracted "a reasonable percentage of social security offset" from appellee's Broughton pension. This was error. The purpose of the social security offset, as discussed in Cornbleth, supra, and in the pension evaluations themselves, is to compensate for the fact that PERS is subject to division as a marital asset whereas social security benefits are not. Appellee was a private employee with a private pension plan. The social security benefits to which she will be entitled (in addition to her pension) cannot be divided by the trial court. Consequently, there is no need for a social security offset to protect her position. The trial court erred in applying such an offset and appellant's first assignment of error is sustained for these reasons.[3]
 II
Appellant's second assignment of error goes to the trial court's distribution of certain items of marital property. He cites us to several findings of fact (distributing that property) and points out that none of the items specified therein were ever given a monetary value. Appellant essentially argues that the failure to assign a value to the property makes it impossible to determine if the distribution was equitable. Thus, he concludes, the trial court erred in its distribution of that property. We disagree.
As mentioned previously, Ohio law requires that property be divided equitably between spouses. R.C. 3105.171 (B). This mandate is generally construed to mean that a monetary value must be placed on every contested asset of the parties in a divorce proceeding. See e.g. Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794,799, 615 N.E.2d 1071, 1075; Goode v. Goode (1991),70 Ohio App.3d 125, 132, 590 N.E.2d 439, 443; also see Rinehart v.Rinehart (May 18, 1998), Gallia App. No. 96CA10, unreported;Gottlieb v. Gottlieb (Mar. 19, 1991), Franklin App. No. 90AP-1131, unreported. In the past, this Court has not hesitated to reverse property distributions where the trial court failed to attach values to contested items of personal property. See e.g.Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported. We decline to do so here, however, because the property distribution ordered by the trial court was almost identical to the "division of personal property" proposed by appellant in his Exhibit J below. He cannot now be heard to contend that such division might be inequitable.
The very reason we require trial courts to place a monetary value on assets is to ensure that contested items of personal property are distributed equitably. There was no dispute over personal property in the cause sub judice. Indeed, the trial court accepted appellant's proposed distribution almost verbatim thereby eliminating any need to engage in a protracted valuation of all the couple's household goods. We thus hold that, by submitting the proposed distribution of property which was essentially adopted by the trial court, appellant waived any right to contest the failure to assign a value to that property. For these reasons, his second assignment of error is overruled.[4]
 III
Appellant's third assignment of error is directed at a life insurance policy taken out by his wife in February, 1978, just a few months before they were married. He contends that the trial court erred in determining that this was separate property without taking into account premiums that were paid with joint funds during the marriage. We agree that the court erred with respect to the treatment afforded this policy, but reach that conclusion for different reasons.
A copy of the insurance policy to which appellant refers was introduced below as "Plaintiff's Exhibit H" and was issued by Peoples Life Insurance Company (hereinafter referred to as "Peoples Insurance"), Policy No. 17886740, in the face amount of $10,000. The trial court, both in its findings of fact and conclusions of law as well as its judgment of divorce, dealt with several other insurance policies owned by appellee but did not discuss this one. It would appear that this particular policy was inadvertently omitted from the court's consideration. The assignment of error is therefore sustained and the matter will be remanded for the trial court to consider distribution of People's Insurance Policy No. 17886740.[5]
 IV
We now turn to the fourth assignment of error which deals with rental property the parties purchased in joint venture with another couple. The trial court essentially assigned a $30,000 fair market value to this property.[6] A one-half (1/2) interest in the property would then be worth $15,000 and, after subtracting what the court determined to be the parties share of debts and expenses related thereto, left a net equity value of roughly $1,000. The court awarded the investment property to appellant and ordered that he compensate his wife in the amount of $500 for her share of that equity. Appellant argues on appeal that the trial court erred in assigning a $30,000 gross value to the property. We agree.
Valuation of property is a factual inquiry and the fair market value assigned to property in a divorce proceeding will not be reversed so long as it does not go against the manifest weight of the evidence. See Boyce v. Boyce (Jul. 16, 1999), Washing.ton App. No. 98CA33, unreported; Walls v. Walls (May 4, 1995), Highland App. No. 94CA849, unreported; Foster v. Foster
(Mar. 9, 1993), Pike App. No. 490, unreported. This will not occur if the value assigned by the trial court is supported by at least some competent and credible evidence. Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533 536; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159; C.E. Morris Co. v. Foley Construction Co. (1978) 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. There does not appear to be any such support in the cause sub judice.
Appellant testified below that the investment property was worth around $15,000. We concede, of course, that the trial court was free to disbelieve that testimony. See generally Statev. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80, 88;State v. Caldwell (1992), 79 Ohio App.3d 667, 679,607 N.E.2d 1096, 1105; State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144, 1148. However, there must still be some evidence somewhere in the record which supports the $30,000 valuation given by the court. Appellee cites us to no such evidence in her brief and we can find none in our own review. Consequently, we have no choice but to sustain the fourth assignment of error and remand this issue for further consideration.
 V
Appellant's fifth assignment of error is directed at the trial court's nineteenth (19th) finding of fact wherein the court determined that he had "misappropriated $750 of insurance checks that were to be paid to [Dr. Schwaner, his wife's] clinical psychologist." (Emphasis added). He objects to the use of the term "misappropriated" and argues that there was insufficient evidence to show any financial misconduct on his part. We agree that "misappropriated" was probably not the correct terminology to use but, nevertheless, conclude that this was harmless error.
Appellant gave the following testimony during direct examination:
 "Q. Counseling and psychiatric services, Doctor Schwaner. Could you advise the court what you did or didn't do with checks and why you did or didn't do whatever you did?
 A. Uh, the checks came to me in my name, uh, from my insurance company. They, uh, I think there was like two or three checks. Uh, we didn't have any bills — I hadn't seen any bills from [Dr.] Schwaner. * * *
 Q. Okay. So now, as far as the checks go, did you cash those?
 A. Yes, I waited for a long time for Joyce to get me the information from [Dr.] Schwaner and she never did, so I eventually cashed the checks so that they wouldn't become void.
Q. So what did you do with the money once they cashed?
 A. I ended up depositing it in the bank and it got absorbed into the balances and used for additional bills." (Emphasis added).
The term "misappropriate" means to embezzle or to appropriate wrongly for one's own use. See American Heritage Dictionary (2d Ed. 1985) 801. It is clear from appellant's testimony below that he did not "misappropriate" this insurance money. The checks were made payable to him and were obviously intended to reimburse him for money he had paid or would pay to Dr. Schwaner in the future. Many people under such circumstances would have simply deposited the insurance proceeds into their own accounts and then drafted checks therefrom to the intended creditor. The fact that appellant never paid Dr. Schwaner means only that he owes her a debt. It does not mean that he stole from her. The checks were never issued to Dr. Schwaner and therefore he never embezzled those funds from her or, for that matter, from the insurance company. This is clearly not a case of financial misappropriation.
Having said that, however, there is clearly nothing wrong in the trial court ordering appellant to pay Dr. Schwaner. In its seventh (7th) conclusion of law, the court directed appellant to pay "Dr. Schwaner the amount of $750.00." He does not challenge this directive anywhere in his assignment of error and we find that it is adequately supported by the evidence adduced below. The trial court's mischaracterization of appellant as having misappropriated the insurance checks issued to pay Dr. Schwaner was therefore harmless under Civ.R. 61 and his fifth assignment of error is overruled.
VI
Appellant's sixth assignment of error goes to the trial court's allocation of unsecured marital debt. The court's findings of fact and conclusions of law, as well as the final divorce decree, allocated that debt as follows:
Appellant Apellee
People's Bank VISA $3,566.08 OMAL Credit Union VISA 345.30 Marietta Hospital 490.16 Firestone (CFNA) charge 109.96 Dr. Garvey 175.92 Florist 103.75 Marietta Times 90.00 Dr. Brocket 31.00 Marietta Gynecological 246.00 Dr. Schwaner 750.00 Personal Loan __________ $2,500.00
TOTAL $5,908.17 $2,500.00
The trial court explained this allocation as being based on "the testimony as to the incurring of that debt." Appellant counters, however, that there was actually little or no testimony concerning many of these debts. We agree. Appellee cites us to nothing in the record, and we have found little in our own review, which deals with many of these debts.[7] Appellant also points to uncontroverted testimony below that his wife (as opposed to himself) incurred the debt to Marietta Gynecological. Again, we agree.
There is no question that trial courts possess broad discretion in allocating debts in a divorce proceeding, see Ervinv. Ervin (Jul. 16, 1999), Mahoning App. No. 96CA177, unreported;Fabre v. Fabre (Dec. 28, 1998), Stark App. Nos. 1998CA88 
1998CA171, unreported; Eitel v. Eitel (Aug. 23, 1996), Pickaway App. No. 95CA11, unreported, and its decisions on such matters will not be reversed absent a showing of an abuse of that discretion. See Hoover v. Hoover (Dec. 18, 1998), Williams App. No. WM-97-031, unreported; Lookabaugh v. Lookabaugh (Dec. 18, 1998), Champaign App. No. 98CA17, unreported; Loeffler v.Loeffler (Nov. 20, 1998), Lucas App. No. L-97-1271, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140, 1142; Malone v. Courtyardby Marriott L.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242;Steiner v. Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855 at paragraph two of the syllabus. Moreover, when applying the abuse of discretion standard, reviewing courts are not free to merely substitute their judgment for that of the trial court. In reJane Doe 1 (1991). 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301,1308. This is a difficult standard to meet, but we must conclude that it was met here.
The trial court's rationale for allocating these various unsecured debts (i.e. that it was based on "the testimony as to the incurring of that debt") simply does not hold up under scrutiny. As mentioned above, one example of that fact is ordering appellant to pay $246 to Marietta Gynecological Associates. That debt was clearly incurred by appellee rather than appellant.[8] Moreover, as appellant argues, we are unable to find any testimony in the record with respect to some of these other debts and appellee has not cited us to any portions of the transcript which would support them. Accordingly, without any basis to support the trial court's expressed reasoning for allocating unsecured marital debt, that allocation would appear to us to be arbitrary and thus an abuse of discretion. The sixth assignment of error is well taken and sustained for these reasons.[9]
 VII
Finally, in his seventh assignment of error, appellant challenges the trial court's award of "alimony" to his ex-wife. That award is set out in the court's findings of facts and conclusions of law as follows:
 "The Defendant/Wife be and hereby is granted alimony in the amount of $460.59 per month. This Court retains jurisdiction to enforce this order; and this order shall not begin until such time as the Plaintiff reaches retirement takes his retirement, or becomes deceased and his retirement is paid. Should he be given the opportunity to elect, the Plaintiff/Husband shall not elect a benefit payment plan unless it is agreed to by the Wife. If the parties cannot agree on a payment plan, then the Plaintiff is enjoined from selecting a plan until this Court has received a motion and ruled on the plan to be used. The Plaintiff shall not encumber or dispose of his retirement benefits without the written consent of the Wife. To the extent the Husband may become deceased prior to receiving his PERS benefits the Wife's interest in the PERS benefits is a charge on the husband's estate." (Emphasis added.)
We agree that there are several problems with this order. First, it is not entirely clear to us whether the court was actually awarding spousal support (alimony) or making a distributive award of marital property. The court states in the first sentence that this is an award of "alimony." However, the court then goes on to discuss "the [w]ife's interest" in PERS and orders a monthly distribution to her in the amount of $460.59 which happens to coincide with what the court determined to be one-half (1/2) of appellant's anticipated monthly PERS benefit upon retirement. This would suggest to us that the court was really making a distributive award of appellee's marital interest in her husband's PERS rather than awarding spousal support. It goes without saying that "alimony" (spousal support) and property division are distinct legal concepts, see R.C. 3105.171 (A) (1); R.C. 3105.18 (A), which are handled differently from one another. On remand, we would ask that the court clarify (for purposes of any future review) whether this is actually an award of alimony or a distribution of marital property.
The second problem with this order is that, even if treated as an alimony award, it is too indefinite in its current form. There is no question that a trial court is permitted under R.C.3105.18 (B) to order continuation of spousal support even after the death of one of the parties. However, that support should be a definite sum for a specific period of time. See Alder v. Alder
(1995), 105 Ohio App.3d 524, 527-528, 664 N.E.2d 609, 611
overruled on different grounds in Carnahan v. Carnahan (1997),118 Ohio App.3d 393, 400, 692 N.E.2d 1086, 1090; also see Kunklev. Kunkle (1990), 51 Ohio St.3d 64, 72-73, 554 N.E.2d 83, 91-92
(interpreting R.C. 3105.18 prior to certain amendments). This allows for the ready determination of an amount of spousal support to be charged against the payor's estate. Otherwise, as appellant cogently notes in his brief, the payor's estate "would be a nightmare to administer and could not be closed." The seventh assignment of error is well taken and sustained for these reasons. On remand, the trial court should set out a definite amount of "alimony" to which appellee is entitled and which could be charged against her husband's estate in the event of his death.[10]
Having sustained all but the second and fifth assignments of error, the judgment of the trial court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and the cause be remanded for further proceedings. It is further ordered that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment Opinion
Evans, J.: Concurs in Judgment Opinion as to Assignments of Error I, II, III, V, VII; Concurs in Judgment Only as to Assignments of Error IV VI
For the Court
 BY: ______(signed)____________ Peter B. Abele, Judge
NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] An "abuse of male privilege" was explained as a male "somehow believing that he is better than" his female spouse and relegating her to the servile position of cooking, cleaning, etc.
[2] We need not and do not reach the issue of whether the hypothetical social security benefit was properly calculated and set off in this manner. Both sides stipulated to the pension evaluations which make use of this method and, in any event, neither side has objected to that approach on appeal. Having said that, we would parenthetically note that this approach has been adopted by some courts in Ohio, see e.g. Neel v. Neel
(1996), 113 Ohio App.3d 24, 31-32, 680 N.E.2d 207, 212; Schaefersv. Schaefers (Nov. 10, 1994), Columbiana App. No. 91-C-44, unreported; Stovall v. Stovall (Sep. 23, 1992), Summitt App. No. 15335, unreported, whereas other courts have employed somewhat different methods to compensate for the social security/public pension dichotomy. See e.g. Eickelberger v. Eickelberger (1994),93 Ohio App.3d 221, 638 N.E.2d 130; Coats v. Coats (1993),63 Ohio Misc.2d 299, 626 N.E.2d 707.
[3] The trial court also found, in its tenth (10th) finding of fact, that appellee's Broughton pension was "negligible and subject to being factored into a division of assets." It is not entirely clear to us what this means. If this passage is interpreted to mean that the trial court excluded the pension entirely from its calculations, as appellant suggests in his brief, this would likewise be error. The record clearly indicates that this pension was accumulated during the course of the marriage and is thus marital property and should be considered in the course of dividing the couple's assets irrespective of its diminutive value.
[4] We note that the facts in this case are distinguishable from those presented in cases such as the aforementioned Wrightv. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported, in which personal property is distributed without a monetary value first being assigned by the trial court. When distribution of household goods and other items of personalty is contested, as in Wright, a monetary value must be placed on the asset. If no evidence as to value is adduced at the hearing, the court must order the parties to submit such evidence. Id. citing Willis v.Willis (1984), 19 Ohio App.3d 45, 48, 482 N.E.2d 1274, 1277. However, in this case the distribution of property was not contested. In fact, the trial court adopted the distribution proposed by appellant. A waiver theory is appropriate under these circumstances because appellant cannot be heard to complain about a distribution that he proposed in the first place.
[5] We would parenthetically note the trial court's conclusion of law that "[a]ll of these [insurance] policies were premarital; and, with the exception of some insurance premiums paid during the marriage, they were the property of [appellee] before the marriage." If it was the trial court's intent to rule that some of the value of these policies constituted marital property, as a result of premiums paid from joint funds during the marriage, it would be beneficial in any future review to note why these policies were distributed to appellee in their entirety or to clarify if appellant was compensated for his share of those policies elsewhere in the property distribution.
[6] The trial court did not expressly assign a $30,000 fair market value but, instead, found that "one half of the investment property is valued at $15,000." This obviously translates into a $30,000 value for the property in its entirety and will be treated as such for purposes of our analysis.
[7] We acknowledge appellant's "Exhibit A" below which sets forth these same creditors. However, that exhibit gives no indication as to who actually "incurred" that debt and thus could not have been the basis for the trial court's allocation.
[8] We also parenthetically note appellee's testimony that she owed $231 to her "OBGYN" rather than the $246 assessed by the trial court. This latter number was presumably taken from appellant's Exhibit A.
[9] Our ruling on this point should not be misconstrued as aper se prohibition against allocating unsecured marital debt in this manner. It may well be that there is some other logical reason for apportioning the debt in this fashion. However, the trial court must explain that reasoning in sufficient detail so that this Court may conduct an effective review thereof.
[10] For instance, if it was the intent of the court to compensate appellee for her one-half (1/2) interest in her husband's PERS, it could order "alimony" be paid to her in the amount of $460.59 per month until such time as she recoups her marital interest in that pension. In the event that either party would die before the entire interest is recouped, the remaining balance could readily be calculated and listed as either an asset to appellee's estate or a charge against appellant's estate.